[No. 21119.   Department One.—October 4, 1894.]

## THE PEOPLE, RESPONDENT, *v.* ROBERT LANG, APPELLANT.

CRIMINAL LAW—INSTRUCTION AS TO MATTERS OF FACT—ALIBI—FALSITY OF EVIDENCE.—In a criminal case, where the defendant relies upon the defense of *alibi*, an instruction to the effect that a witness willfully false in one part of his testimony is to be distrusted in others, accompanied by a statement to the effect that the testimony of the defendant as to his being with a particular person the whole of the day on which the offense was alleged to have been committed was shown to be incorrect, and leaving it to the jury to say whether the testimony was willfully false, or whether the defendant was honestly mistaken, invades the province of the jury, to the prejudice of defendant's constitutional right, by charging the jury with reference to matters of fact.

ID.—CREDIBILITY OF DEFENDANT—IMPROPER INSTRUCTION.—An instruction upon the question of the credibility of the evidence of the defendant, that the defendant "of course has a powerful motive to swear himself out of this charge," in connection with other words indicating to the jury that the court was of the opinion, that, though the defendant might possibly be believed, it was not probable that he would tell the truth under the circumstances, transcends the proper limitation of the rule as to instructions upon the subject of the evidence of the defendant, which has been established by this court.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*John T. Carey,* for Appellant.

The court erred in its instruction as to the distrust with which the defendant's evidence was to be viewed.

and as to the falsity of his evidence, as it in effect charged the jury with reference to matters of fact. (*People* v. *Murray*, 86 Cal. 31; Code Civ. Proc., sec. 1847; Const., art. 6, sec. 19.) The statement of the court in its instruction to the jury, that the defendant had a " powerful motive" to swear himself clear, is a charge upon a matter of fact. (*People* v. *Ah Sing*, 59 Cal. 400; *People* v. *Titherington*, 59 Cal. 598.)

*Attorney General W. H. H. Hart,* and *Deputy Attorney General Charles H. Jackson,* for Respondent.

The court did not err in stating the facts as to the defendant's false testimony, as the court may state the testimony as long as he gives no opinion upon it. (*People* v. *Wong Ah Foo,* 69 Cal. 182; *People* v. *Casey,* 65 Cal. 260; *People* v. *Righetti,* 66 Cal. 184.) The statement that the defendant had a powerful motive to swear himself out of the charge was proper. (*People* v. *Lane,* 100 Cal. 379; *People* v. *Baker,* 100 Cal. 188; 38 Am. St. Rep. 276.)

VAN FLEET, J.—Defendant was convicted of burglary in the second degree and sentenced to the state prison for a term of five years. He appeals from the judgment and an order denying his motion for a new trial.

Several points are made for a reversal of the judgment, mostly based upon objections to the charge of the court.

1. The evidence of the prosecution tended to show that the burglary with which defendant was charged was committed by entering a dwelling-house at 419 Baker street, in the city of San Francisco, on the eleventh day of June, 1893, between the hours of 11 A. M. and 5 P. M. The defendant's main defense was an *alibi.* He testified that he did not commit the burglary; that he did not enter the house; was never near it in his life. He said: "I remember Sunday, the 11th of June last. I was at Mr. Carr's place. He keeps a saloon at the end of the Sutter street road, right at the corner.

I went there between 8 and 9 o'clock Sunday morning, June 11th, and remained there until Monday about 12 o'clock. About 9 o'clock Sunday evening Mr. Carr asked me to come down town with him; he had a trotting horse. We went down town, and they were building a line at the time at Fifth and Mission, and the rails at this time were about this high (showing) above the pavement, and in going over it the buggy broke down. We had to leave the buggy and go to a livery-stable and hire another buggy and put the horse in it to go home with. That was on Sunday, June 11th, and that is the reason I remember the day." Mr. Carr, called as a witness on behalf of defendant, testified in substance as follows: "I live at the corner of Sutter and Central avenue. I am acquainted with the defendant. He was at my house the day the buggy broke down. The stableman says it was the 13th of June, Tuesday, this year. I have no means of knowing or telling the day of the week except by what the stableman says. I am sure it was not on Sunday; it was a week day. The day the buggy broke down he was out there and wanted me to go on a bond for a friend of his. It was about 2 o'clock in the afternoon that we went down town in the buggy. The buggy broke down at Fourth street. It was not on Sunday the buggy broke down. He was out there two or three days before that. He was out there the Sunday before that. He was out there for two or three days before the day the buggy broke down. He was there Sunday, the 11th of June. I think he was there Saturday, Sunday, and Monday. I can't say how long he stayed, it is so long ago; maybe an hour or two; he was there off and on. I was busy; Sunday is a busy day out there." Afterwards the defendant admitted that he was mistaken as to the day the buggy broke down. This was all the testimony introduced on the question of *alibi*. In this state of the evidence the court, in its charge to the jury, said: "Now, as to the matter of testimony, as I remarked to you before, the value of the testimony is entirely with you; you

are the judges of that, but I will remind you that a witness false in one part of his testimony is to be distrusted in others; that is to say, a witness willfully false. Now, defendant took the stand, and he undertook to state that on the particular Sunday involved he was with a particular person the whole of that day; *it turns out, it seems, that that was not so.* Now, do you believe that he was willfully false in making that statement? It is said upon his part, and that is a matter to be considered, that, as a matter of fact, he was with this witness Carr, but he was simply mistaken as to the particular day; that he was honest in his statement. Of course, if you think it was, it would not come under this rule that I have read to you."

It is urged, and we think justly so, that by this language the learned judge of the court below violated section 19 of article VI of the constitution of the state, which provides "that judges shall not charge juries with respect to matters of fact." The court virtually tells the jury that the statement of the defendant that he was at the witness Carr's house during the whole of the time he testified he was, on Sunday, June 11th, was not true, but was false, and simply leaves it with the jury to say whether that statement was willfully false or only inadvertently so. The evidence upon the point is not *necessarily* open to such interpretation. It is true that it may be susceptible of such an inference, but that inference was for the jury, untrammeled by the views of the court upon the subject. The defendant had stated that he was at Carr's during certain hours on that Sunday, that he remembered the day because of the accident to the buggy; afterwards it turned out that the accident to the buggy occurred on a subsequent occasion, but it does not necessarily follow that because he was mistaken, or even intentionally misstated the incident about the buggy, that his testimony was incorrect or false about being at the place indicated. In fact he is corroborated in the latter statement by Carr, who testified: "He was out there the Sunday before that. He was out there for

two or three days before the day the buggy broke down. *He was there Sunday, the 11th of June.* I think he was there Saturday, Sunday, and Monday." It will thus be seen that the jury may well have seen fit, if left uninfluenced by the judgment of the court, to believe the defendant as to the time he was at Carr's house on the Sunday in question, notwithstanding the disparaging effect of the mistake as to the date of the buggy incident. What effect should be given to the latter when viewed in the light of all the evidence upon the fact in dispute was a question wholly committed to the jury, and the action of the court was in effect to withdraw it from their consideration. This was a plain invasion of the province of the jury and to the prejudice of defendant's constitutional right, for which the judgment must be reversed. (*People* v. *Murray*, 86 Cal. 31; *People* v. *Gordon*, 88 Cal. 422.)

2. In view of the fact that the case must go back for a retrial, we will notice one other point. Upon the question of the credibility of witnesses, the court, in speaking of the evidence of the defendant, said: "In looking at his testimony you must remember it is the testimony of an accused man; of course he has a powerful motive to swear himself out of this charge; we all understand that, and while you are not to disbelieve him merely because he is in that situation, still you will not shut your eyes to the fact that he has that motive, and you will govern yourselves accordingly; that is to say, you will look at his testimony by the light of that fact; you may believe it after all, that is for you, as I said before, and so it is with any other witness; the law invites your attention to the motives of the witnesses." It is contended that by this language the court clearly indicated to the jury that it was of opinion the defendant should not be believed; that the effect of this part of the charge on the ordinary mind would be "that the defendant might possibly be believed, but it was not at all probable that he would tell the truth under the circumstances." We are inclined to think this criticism

not without merit, and that the learned judge transcended the proper limitation of the rule on this subject which has been established by this court. We cannot do better in this regard than to repeat what is said by Mr. Justice McFarland in *People* v. *Murray*, 86 Cal. 31: "We think that the court went too far in cautioning the jury against believing the defendant and the two other persons charged with the crime, although we would not be prepared to say that the judgment should be reversed for that reason. In *People* v. *Cronin*, 34 Cal. 191, it was held not to be error for a court speaking of the credibility of a defendant who was a witness for himself, to tell the jury that 'you should consider his relation and situation under which he gives his testimony, the consequences to him from the result of this trial, and all the inducements and temptations which would ordinarily influence a person in his situation.' That instruction has been approved in subsequent cases, and it is now too late to question its correctness; but, if courts and prosecuting attorneys think it their duty to have an instruction on that subject in every case, they should be careful not to go further in that direction than courts have already done."

There are several other points strongly urged by appellant, but in view of the fact that they involve questions which will not necessarily arise upon another trial, we do not deem it necessary to consider them at this time.

Judgment and order reversed and cause remanded for a new trial.

GAROUTTE, J., and HARRISON, J., concurred.