[Crim. No. 69. Department Two.—January 28, 1896.]

THE PEOPLE, RESPONDENT, v. W. W. VAN EWAN, APPELLANT.

CRIMINAL LAW—EMBEZZLEMENT—OWNERSHIP OF MONEY—SALE OF GOODS—AGENCY—AUTHORITY TO COLLECT—NOTICE OF DISCHARGE—VARIANCE. Where a defendant accused of the embezzlement of money had been the agent of a company, with authority to sell goods and collect bills, and had sold goods as such agent to the one named in the indictment as the owner of the money embezzled, and had collected the money from him at a time subsequent to his discharge from employment as such agent, there is no fatal variance between the indictment and the proof, although the one to whom the goods were sold was not notified of the agent's discharge, and could compel the company to credit him with the money. But if the defendant was in fact the agent of the company when the money embezzled was collected he could not be convicted under the indictment.

ID.—DEMAND FOR RETURN OF MONEY.—It is not necessary, in order to sustain a conviction for embezzlement of the money, as the property of the one from whom the collection was made by the defendant without

authority after his discharge from employment, that such person should
have made a demand on the defendant for the return of the money.

ID.—EVIDENCE OF OTHER EMBEZZLEMENTS—RECEIPTS OF MONEY.—Evidence
is admissible to show that the defendant charged with embezzlement
had been guilty of other embezzlements from the company of which he
had been the agent, and in connection with such proof, receipts of
money given by the defendant to its other customers, though not suf-
ficient of themselves to show embezzlement, are admissible in evidence
on that issue.

ID.—RE-EXAMINATION— EVIDENCE NOT GIVEN ON CROSS-EXAMINATION.—
Where, upon cross-examination of the prosecuting witness, a paper was
presented to the witness by defendant's counsel, who asked him to iden-
tify two items in it, but did not offer the paper or the items in evidence,
it is erroneous to allow the prosecution on re-examination to offer the
paper in evidence in explanation of the two items, against the objection
of the defendant.

ID.—IMPROPER CROSS-EXAMINATION OF DEFENDANT.—It is improper to al-
low cross-examination of the defendant about any matter to which he
has not testified in chief.

ID. — REBUTTAL — REITERATION OF TESTIMONY FOR PROSECUTION. — Wit-
nesses for the prosecution should not be allowed to reiterate their testi-
mony under the guise of rebuttal.

ID.—INSTRUCTIONS—CREDIBILITY OF DEFENDANT.—It is the better practice
to give no instruction as to the credibility of the defendant as a witness
in his own behalf; although if an instruction is given in general terms
as to the credibility of a defendant as a witness, in the form sanctioned
in the case of *People* v. *Cronin*, 34 Cal. 191, and in subsequent cases, it
is not ground for reversal; but, when the language used is such as
strongly to suggest to the jury that in the case then before them the
defendant testified falsely, or to intimate that such is the opinion of
the court, the judgment cannot stand; and when the language used by
the court in commenting on the testimony of a defendant is materially
different from that used in the Cronin case, the judgment must be
reversed, unless this court can see that the difference has not been pre-
judicial.

APPEAL from a judgment of the Superior Court of
the City and County of San Francisco, and from an or-
der denying a new trial. WILLIAM R. DAINGERFIELD,
Judge.

The facts are stated in the opinion of the court.

*Bruner & Bruner*, for Appellant.

The evidence does not sustain a conversion of the
money of Poppa.    Payment to an agent in the ordi-
nary course of business binds the principal, unless the
latter has notified the debtor beforehand that he requires

the payment to be made to himself. (2 Parsons on Contracts, 7th ed., sec. 614; *Bronson* v. *Chappell*, 12 Wall. 683–86; *Insurance Co.* v. *McCain*, 96 U. S. 86; *Ex parte Ricord,* 11 Nev. 287: *Claflin* v. *Lenheim*, 66 N. Y. 305; *Johnson* v. *Christian*, 128 U. S. 381; *Hatch* v. *Coddington*, 95 U. S. 56; Civ. Code, sec. 2355.) The testimony shows that the Savage Commercial Company ratified the act of the defendant in taking the money from Poppa, by crediting it to him on their books, and the debt was thereby extinguished. (Civ. Code, sec. 1473; *Drakely* v. *Gregg*, 8 Wall. 242; *Griffin* v. *State*, 4 Tex. App. 390.) There was a fatal variance between the indictment and the proof. (*Cotes* v. *Campbell*, 3 Cal. 191; *McCord* v. *Seale*, 56 Cal. 262; *Frazier* v. *Hanlon*, 5 Cal. 156.) The court erred in permitting the prosecution to cross-examine the defendant as to what occurred at the racetrack, about which he was not examined in chief. (*People* v. *Bishop*, 81 Cal. 113; *People* v. *O'Brien*, 66 Cal. 602; *People* v. *Wong Ah Leong*, 99 Cal. 440. It was improper to admit evidence of embezzlements from the Savage Commercial Company not named in the indictment. (*Commonwealth* v. *Shepard*, 1 Allen, 575, 587; *People* v. *Baird*, 104 Cal. 462; *People* v. *Barnes*, 48 Cal. 551; *People* v. *McNutt*, 64 Cal. 116; *People* v. *Tucker*, 104 Cal. 440; *Regina* v. *Oddy*, 4 Eng. L. & E. 572.) The receipts were not the best evidence. (*Ford* v. *Smith*, 5 Cal. 314.) If the money paid was Poppa's under an implied trust, a demand was necessary. (*People* v. *Tomlinson*, 66 Cal. 344; *People* v. *Wyman*, 102 Cal. 552.) The instruction as to the credibility of defendant was erroneous. *People* v. *Cronin*, 34 Cal. 191, should be modified, the law being different now from what it was when that case was decided. (Stats. 1865–66, p. 865; Pen. Code, sec. 1323.)

*W. F. Fitzgerald, Attorney General*, and *C. N. Post, Deputy Attorney General*, for respondent.

Defendant having been dismissed from the agency had no authority in fact. The jury having found

against him on that fact, their verdict is decisive. (*People* v. *Treadwell*, 69 Cal. 230; *People* v. *Neyce*, 86 Cal. 393.) The evidence of betting at the race track was proper cross-examination to show the improbability of his testimony that he paid over the money received from Poppa. (*United States* v. *Camp*, 10 Pac. Rep. 226.) Evidence of embezzlements from the Savage Commercial Company was competent. (*People* v. *Bibby*, 91 Cal. 470; *People* v. *Neyce, supra; People* v. *Gray*, 66 Cal. 271; *People* v. *Walters*, 98 Cal. 141; *People* v. *Cunningham*, 66 Cal. 668; *People* v. *Lattimore*, 86 Cal. 403; *People* v. *Frank*, 28 Cal. 507; Am. & Eng. Ency. of Law, 501 h.) Demand and refusal, though *pri.ia facie* evidence of embezzlement, are not necessary to conviction. (Am. & Eng. Ency. of Law, tit. Embezzlement, 502, *k; Hollingsworth* v. *State*, 111 Ind. 289.) The instruction as to the credibility of defendant was proper. (*People* v. *Cronin*, 34 Cal. 191.)

McFARLAND, J.—The defendant was charged with embezzling one hundred dollars, the property of one J. Poppa, and was convicted. He appeals from the judgment and from an order denying his motion for a new trial.

Although the case must be reversed for reasons hereinafter given, a few of the points made by appellant which are not tenable must be noticed, because they may arise upon another trial.

1. It is contended that the money alleged to have been embezzled was not the property of Poppa, but was the property of the Savage Commercial Company. The appellant had for several years been the agent of said company, with authority to sell goods and collect bills. He had sold goods frequently to Poppa, and had collected the amounts due said company for said goods. On December 13, 1893, he collected from Poppa the one hundred dollars alleged to have been embezzled. Now, witnesses for the prosecution testified that appellant had been discharged from the employ of said com-

pany several days prior to said December 13th. If this is true, then there was no fatal variance between the indictment and the proof; and, in that event, the fact that Poppa was not notified of appellant's discharge, and therefore could compel the company to credit him with the money, makes no difference. If, however, appellant had not been discharged on the 13th, then the money was the property of said company, and appellant could not be convicted under the indictment. We do not think that a demand by Poppa on appellant for the money was, under the circumstances, necessary.

We do not think that the court erred in allowing evidence tending to show other embezzlements by appellant of moneys of said company about the time of the alleged embezzlement charged in this indictment. Neither do we think that the court erred in admitting receipts given by appellant, over his own signature, to certain customers of said company. We do not mean to say that such a receipt would, itself, be sufficient to show an embezzlement; but it would be an act of a defendant admissible as evidence on that issue. The question presented in *Ford* v. *Smith*, 5 Cal. 314, was a very different one. There it was attempted to introduce the receipt of a third party to prove that the defendant in that case had paid money.

2. On the cross-examination of the people's witness, Ade, counsel for appellant presented a paper to the witness, and asked him to identify two items in it, but did not offer the paper or the items in evidence. On reexamination the prosecution offered the paper in evidence in explanation of the two items, and it was admitted over appellant's objection; but, as the appellant had not offered the items in evidence, it was clearly erroneous to allow the introduction of the paper by the prosecution at that time.

The court also erred in allowing appellant to be cross-examined about some bets which he made on said December 13th, at the racetrack. It was not proper cross-examination, for it was not a matter about which

he testified in chief, nor was it relevant; and its effect was to prejudice appellant in the minds of the jurors.

We think that the court improperly allowed witnesses for the prosecution to reiterate their testimony under the guise of rebuttal. There are also minor points made on alleged errors in rulings on the admissibility of evidence which are hardly of importance enough to demand special notice.

3. But whether or not the errors above noticed are sufficiently grave to cause a reversal, the judgment and order appealed from must be reversed on account of the instructions given by the court to the jury on the subject of the credibility of the appellant as a witness.

If the question were entirely an open one we would feel constrained to hold, upon principle, that any instruction at all as to the credibility of any witness, or the weight to be given to his testimony, is violative of section 19 of article VI of the constitution, which provides that "judges shall not charge jurors with respect to matters of fact," and section 1887 of the Code of Civil Procedure, which, referring to a witness, provides that "the jury are the exclusive judges of his credibility." But, in *People* v. *Cronin*, 34 Cal. 191, which was decided nearly a generation ago, an instruction was approved which stated in general terms that, when a defendant had appeared himself as a witness, the jury should consider the situation under which he gave his testimony, the consequences to him from the result of the trial, and the inducements and temptations "which would ordinarily influence a person in his situation." During succeeding years a similar instruction was several times approved; and, as district attorneys and trial courts persisted in asking for and giving it on all occasions, it was evident that the rule could not be changed without causing reversals in nearly every case on its way here by appeal. Moreover, the instruction in *People* v. *Cronin, supra,* was very general in its language, and could hardly be construed as an intimation from the judge that *he* doubted the truth of the defend-

ant's testimony in a particular case, and, as therefore it could probably do no harm, it was no doubt better to allow the rule to stand than to disturb the course of justice in many cases by overruling it. But trial courts, moved, no doubt, in many instances by prosecuting officers, began to gradually expand the Cronin instruction, and to substitute for it their own language; and the danger of that course has been many times pointed out by this court. It will be profitable, perhaps, to notice here a few of the opinions and decisions upon the subject, with the hope that officers intrusted with the administration of the criminal law who have not read those opinions and decisions may happen to notice the present opinion.

In *People* v. *Murray*, 86 Cal. 31, the court, speaking of the Cronin instruction, said : " That instruction has been affirmed in subsequent cases, and it is now too late to question its correctness ; but if courts and prosecuting attorneys think it their duty to have an instruction on that subject in every case they should be careful to go no further in that direction than courts have already gone. An instruction giving the general rule can do no harm, and is not of much consequence, for every intelligent juror knows, without any instruction on the subject, that a defendant, whether innocent or guilty, is deeply interested in being acquitted. But when such an instruction is reiterated, and put into exceedingly strong language, so as to give it peculiar emphasis, it is too apt to lead the jury to believe that the court thinks the defendant in the particular case on trial to be unworthy of belief. The credibility of the witness in such a case should be left as much as possible to the jury."

In *People* v. *Faulke*, 96 Cal. 20, the court after alluding to the Cronin instruction and saying " that it is too late to question its correctness," and that " it is an instruction that can rarely be necessary," and alluding to the danger of changing it, say : " If district attorneys, as well as courts, would be careful while framing instructions not to tread upon that dangerous borderland

which lies between matter of fact and matter of law, the result of the trial would rarely be changed, and the occasion for an appeal would be avoided. After a proposition of law involved in an instruction has been often approved upon appeal, the trial court will obviate further appeal thereon if it will limit its instructions upon that proposition to the terms in which it has been approved, rather than attempt a variation upon such terms."

In *People* v. *O'Brien*, 96 Cal. 182, the court, speaking of a like instruction, say: "As a slight change in the phraseology of the instruction, however, is liable to be construed as going beyond the limits of what has been approved, it would be a safer course, and one which would work no injustice to the people, *if it were entirely omitted* from the instructions asked and given on behalf of the prosecution."

In *People* v. *Curry*, 103 Cal. 549, the court, speaking of a similar instruction about a defendant's testimony as a witness, say: "We have often suggested that the better practice would be to refrain from instructing jurors to the effect as evidenced by the foregoing instruction, but the suggestion appears to fall upon stony places, and brings forth no results. We shall limit the rule strictly as it has been heretofore declared, and new trials will be the result if those limits are overstepped to any extent."

In *People* v. *Lang*, 104 Cal. 368, the court quoted with approval the language used in the opinion in *People* v. *Murray*, *supra*.

In *People* v. *Anderson*, 105 Cal. 35, the court, speaking of a similar instruction, said: "While the instruction is not so wide a departure from instructions which have been allowed to pass by this court as not furnishing sufficient ground for reversal, we deem it proper to again call attention to the criticism of similar instructions in the recent cases of *People* v. *Murray*, *supra; People* v. *Curry*, *supra;* and *People* v. *Lang*, *supra*.

In *People* v. *Hertz*, 105 Cal. 663, the trial court had

undertaken to carry the doctrine so far as to include the relatives of the defendant; and the court, in its opinion reversing the case, said: "An instruction to the jury bearing upon the credibility of a defendant's testimony is not looked upon with favor by this court. We have repeatedly frowned upon the doctrine, and said that it would be limited within the strictest lines."

And in the recent case of *People* v. *Shattuck*, 109 Cal. 681, in which the judgment was reversed for an instruction touching the testimony of a relative of the defendant, and in which the case of *People* v. *Hertz, supra,* was approved, the court said: "The court has frequently hinted that a similar instruction in regard to the defendant is erroneous, because it violates the constitutional provision that the judges shall not charge juries with respect to matters of fact." As to the general proposition that a judge is precluded from instructing about the credibility of a witness, or any matter of fact, see *People* v. *McNamara*, 94 Cal. 509; *People* v. *Cesena*, 90 Cal. 383; *People* v. *Travers*, 88 Cal. 233; *People* v. *Fong Ching*, 78 Cal. 169; *People* v. *Dick*, 34 Cal. 663; *McMinn* v. *Whelan*, 27 Cal. 320; *People* v. *Stanton*, 106 Cal. 142; *People* v. *Choynski*, 95 Cal. 643.

Instructions about the credibility of a defendant as a witness are, no doubt, sometimes given through habit, or to round out a charge; but considering the many expressions of opinion and decisions above referred to, it is difficult to logically attribute the giving of any instruction whatever on the subject to anything else than a purpose to expressly disparage a witness before a jury,—the very thing that a court has no authority to do. However, if the language used be kept well within the general terms of the instruction in *People* v. *Cronin, supra,* this court, for the reason that has been so frequently given, will not, on account of such language, reverse the judgment; but when the language used is such as to strongly suggest to the jury that in the case then before them the defendant testified falsely, or to intimate that such is the opinion of the court, then the judgment cannot

stand.   And in the case at bar we think that the language used, as was said in *People* v. *Murray, supra,* tended to "lead the jury to believe that the court thinks the defendant in the particular case on trial to be unworthy of belief." There was considerable said in the charge about the defendant's testimony.   The jury was called upon to consider "what he said" and "what he did n't say"; and they were finally told: "In weighing his testimony you are to consider what he has at stake. You are to consider the temptations that may be brought to bear upon a man in his situation to tell a falsehood for the purpose of inducing you to acquit him, or to disagree." This was going far beyond the general platitudes of the instruction in *People* v. *Cronin, supra.* It is difficult to see how it was intended for anything else than an argument against the truthfulness of appellant's testimony. Why were the jurors warned against the temptation that appellant was under to cause them, by his false testimony, to *disagree?* Why was anything said about disagreement before the case had been submitted to the jury?   The suggestion, at that time, of a disagreement, was a suggestion that at least some of the jurors would, or ought to, be in favor of a conviction. Indeed, it is almost impossible to conceive how the jury could have failed to understand that the opinion of the court was adverse to the credibility of the appellant. And where the language used by a court in commenting on the testimony of a defendant is materially different from that used in *People* v. *Cronin, supra,* and we cannot see that the difference has not been prejudicial, the judgment must be reversed.   An instruction on the subject that is kept within proper limits is of no real benefit to the prosecution, and therefore unnecessary; if pushed beyond those limits it is erroneously prejudicial to the defendant.   Justice would therefore be more surely accomplished if no instruction at all were given, and the credibility of the defendant were left entirely to the jury.   The correctness and justice of such a course has been frequently pointed out by this court,

and if it were followed there would be no difficulty on the subject.

The judgment and order appealed from are reversed, and the cause remanded for a new trial.

TEMPLE, J., and HENSHAW, J., concurred.