[Criminal No. 352. Filed June 15, 1914.]

[141 Pac. 706.]

## GENOVENO LUJAN, Appellant, v. STATE, Respondent.

1. WITNESSES—COMPETENCY—JOINT DEFENDANTS—CRIMINAL PROSECUTION.—Under Penal Code of 1913, sections 1226, 1227, providing that neither parties nor other persons interested in the event of a prosecution are incompetent, and that persons of unsound mind and children under 10 years of age who appear incapable of receiving just impressions, shall be incompetent, and in view of section 1229, providing that an accused may testify in his own behalf, one of several parties jointly charged with crime may, though there is a severance, testify in favor of his codefendant, notwithstanding section 1040, authorizing the discharge of one of several joint defendants, and providing that in such case he may testify as witness for his codefendant.

2. CRIMINAL LAW—APPEAL—HARMLESS ERROR.—Where several jointly indicted were granted a severance, the exclusion of accused's codefendant when first offered as a witness was not error, where, after accused closed his case, the court offered to allow him to reopen and introduce his codefendant as a witness.

3. CRIMINAL LAW—INSTRUCTIONS—INVASION OF PROVINCE OF JURY.—In a prosecution for theft of a cow, which, it was claimed, accused killed and butchered, an instruction that, the intention with which an act is committed being but a mental state, direct proof of it is not required, but it may be established by circumstances, and that the intention with which accused committed the act complained of must be determined from all the evidence, is erroneous, being an unwarranted invasion of the province of the jury, contrary to Constitution, article 6, section 12, prohibiting instructions on the facts, in assuming that accused killed and butchered the cow.

4. CRIMINAL LAW—APPEAL—HARMLESS ERROR.—An instruction, in a prosecution for cattle theft, where it was claimed that accused shot a cow and butchered it, that the intention with which accused com-

mitted the act complained of must be determined from all the evidence cannot be held harmless under Constitution, article 6, section 22, prohibiting reversals for technical errors when substantial justice has been done, even though other instructions charged that the jury were the sole judges of the facts.

5. LARCENY—PROSECUTION.—In a prosecution for cattle theft, the state must prove the ownership of the animal as alleged in the indictment.

6. LARCENY — PROSECUTION — DEFENSES.—In a prosecution for cattle theft, accused may be guilty, although he did not kill the animal or carry away the meat, and hence an instruction that the state must prove that accused killed the animal or was concerned in carrying the meat away is properly refused, being too restricted.

7. LARCENY — PROSECUTION — EVIDENCE.— In a prosecution for cattle theft, where it appeared that a cow stolen had been shot, evidence that accused had in his possession a rifle of the same caliber as the bullet which killed the animal is admissible.

8. LARCENY—PROSECUTION—EVIDENCE.—Joint possession or possession with others of stolen property may be evidence of guilt, depending upon the facts of the case.

9. LARCENY—PROSECUTION—EVIDENCE.—In a prosecution for the theft of a cow, evidence that the meat was cached near accused's tent, and that tracks led from the tent to the cache, is competent to show the control and possession of the meat by the persons occupying the tent, including accused.

[As to what constitutes larceny, see notes in 57 Am. Dec. 271; 88 Am. St. Rep. 559. As to possession of stolen property as evidence of larceny, see note in 70 Am. Dec. 447.]

APPEAL from a judgment of the Superior Court of the County of Greenlee. F. B. Laine, Judge. Reversed and remanded.

The facts are stated in the opinion.

Mr. L. Kearney, for Appellant.

Mr. G. P. Bullard, Attorney General, and Mr. Leslie C. Hardy, Assistant Attorney General, for Respondent.

ROSS, J.—The appellant and Federico Merino and Brigido Lira were accused by the same information with the larceny of a cow. Appellant demanded a separate trial. He was convicted and sentenced to the penitentiary. He appeals

from the order overruling his motion for a new trial, and from the judgment.

The facts in brief are: The appellant and his codefendants were woodchoppers. Prior to October 6, 1913, the date of the alleged crime, appellant and his codefendants pitched their camp in Long Canyon or Dick's creek, a rather isolated and unfrequented part of Greenlee county, as we infer from the evidence. They were occupied, as the testimony shows, in chopping wood with a view of conveying it to market on burros. On October 6th three cowmen, Frank Davis, Clyde Barber, and Ed Elrage, while riding the range after cattle, about a mile and a half from the wood camp, discovered some blood on the rocks in the trail they were traveling. These blood marks led them to investigate for evidence of the cause of their being there. Following the clue some 40 or 50 yards evidences were found indicating that an animal had fallen. The signs of blood indicated that the animal died there. A drag from that point was followed some 60 or 70 yards into a dry arroyo where the hide, head and entrails were found covered, as one witness said, with about a ton of malapai rock. The hide bore the brand and earmark of George Graham. Men's tracks were seen in the soft gravel bed of the arroyo where this cache was found. The animal was killed by shooting; two or three bullet holes being found in head and hide. About 50 yards from where the first blood was discovered three empty 25–20 cartridge shells were found. Taking up the signs where the animal was dressed, the three cowmen followed the tracks and signs for 1½ miles to the camp of appellant and his codefendants. Some meat was found cached in a draw under some sheltering rocks some 40 or 50 yards from the wood camp. It was cut into small pieces, with the bones removed, except some small parts of the ribs. It was covered with some gunny-sacks, and appeared, as did the hide and head, to have been butchered about 24 hours. About 40 pounds of the meat was found just a few feet from tents covered over with pack saddles, blankets and wood. Some tallow and cracklings were found in a kettle in one of the tents. A piece of rope, with blood and tallow on it, was found in the camp. An ax was found, with blood and tallow on it. One witness testified the meat "was all chopped up with an ax in chunks that would weigh about 10 or 20

pounds.'' A 25-20 rifle and a belt of cartridges of that size were found in appellant's possession. There was, from the tents of appellant and his codefendants, a trail with signs of recent use to where the meat was cached. One witness said:

''There were four different foot tracks, and one of them had on hobnailed shoes, and we could trail him very plainly. On his left foot the heel was off, and no hobnails. We trailed it and the others to where we found the beef. When they arrested this man [appellant] he had on the hobnailed shoes that made the track. . . . He had on a pair of shoes with no hobnails in the left heel.''

The appellant's codefendant Federico Merino was sworn as a witness on his behalf. The county attorney objected to his testimony on the ground that he was a codefendant with appellant. The court sustained the objection. Whereupon appellant offered to prove by Merino, if permitted to do so, that none of the defendants was concerned in the killing of the animal, and did not carry away any of the meat, or take it close to where they were camped, nor conceal it, and that, if there was any such meat there, it was carried there by other persons, and that defendants had no knowledge of any such meat, or the concealment of the same, until or after their arrest. This offer was refused by the court. The appellant then testified that he did not shoot the cow, nor let anyone have his rifle to shoot it with; that he had no bloody axe nor piece of rope; that he knew nothing of the meat until arrested; that Merino had brought the carcass of a goat out to camp on October 2d. After appellant had rested, the county attorney withdrew his objections to Merino's testimony and offered to permit the appellant ''to introduce such testimony at this time.'' Appellant, announcing that he had rested, refused the offer.

The appellant complains that his rights were prejudiced by errors committed in his trial, as follows:

(1) In the refusal of the court to permit Federico Merino to testify on behalf of defendant.

(2) In giving the following instruction:

''The intent with which the defendant committed the act complained of must be determined by you from all the evidence.''

(3) In refusing the request of defendant to give the four following instructions:

"No. 12.  I charge you it is necessary for the state to prove the ownership of the animal as alleged in the indictment; that the defendant himself, or with others, killed this animal, or was concerned in carrying its meat away."

"No. 13.  In this case it is not sufficient to warrant a conviction of the defendant that the state prove that the carcass of the animal alleged in the indictment was found on the commons, or on the public domain, at a place near where the defendant lived, or that the defendant, or defendant and others, was or were found with fresh meat in his or their possession; but the state must go further and show beyond a reasonable doubt that the defendant, or that the defendants with others, did in fact carry away the meat of the animal, or was concerned in killing the animal in order that he, or he with others, may carry its meat away, or, in other words, the state must prove beyond a reasonable doubt that the defendant, or he with others, did steal the animal, or assist in killing it, or did assist in carrying away its meat."

"No. 14.  Neither is it sufficient to prove that the defendant, or the defendant with others, had guns or firearms in his or their possession, or that the animal was apparently killed with a caliber gun such as might have been found in the possession of the defendant."

"No. 15.  Possession means dominion over, as one has some article in his house, in his trunk, or in his inclosure; it means exclusive possession.  A possession of a thing on the public domain, of which any and every one may come along, may have the same possession, is not possession at all.

"In order that possession of anything may be any evidence of guilt, the possession must be exclusive; a joint possession, or a possession with others, or a possession that others have, is no evidence of guilt, and in larceny is not deemed possession at all."

We will consider these assignments in the order given.

It is provided by law that all persons, except persons occupying particular relations (section 1228, Penal Code) and persons of unsound mind and incapable children under 10 years of age (section 1227), are competent witnesses (section 1226). Neither parties nor other persons who have an interest in the

event of an action or proceeding are excluded, nor those who have been convicted of crime; but in every case the credibility of the witness may be drawn in question. Section 1226. A defendant may be a witness in his own behalf. Section 1229. Had there been no severance, the codefendant Merino could have testified in the joint trial of himself and appellant. It has long been the settled law that upon a severance the defendant being tried may use his codefendant as a witness, and that section 1040, Penal Code, does not deny that right. *People* v. *Labra,* 5 Cal. 183; *People* v. *Newberry,* 20 Cal. 440; *McGinness* v. *State,* 4 Wyo. 121, 31 Pac. 978, 53 Pac. 492; Wigmore on Evidence, secs. 580, 581. It was error, therefore, to refuse the appellant the testimony of his codefendant Merino, and the question is: Was this error cured by the subsequent offer, after appellant had rested, but before the case was closed or submitted to the jury, to allow the witness to testify? Of course the orderly procedure would have been to permit the witness to give his evidence at the time he was offered by appellant. The erroneous ruling of the court in rejecting him as a witness had the effect of disarranging the order of witnesses as tendered by appellant; but we are unable to perceive wherein this departure could harm the appellant. It was not too late, when the court reversed its erroneous ruling, for the appellant to secure the benefit of the testimony of his codefendant. From his offer of proof by this witness, we cannot see wherein its probative value could have been affected by the postponement until after the appellant testified. The order of introducing topics of evidence and witnesses is largely in the discretion of the trial court, and not the subject of error, if the evidence tendered is, in fact, allowed at some stage of the trial, and no prejudice is shown. Wigmore on Evidence, sec. 1867; Thompson on Trials, sec. 344; 12 Cyc. 902. We think to reverse the case on this assignment would be an encouragement of technical adroitness of counsel to the disparagement of the rules of justice.

Error No. 2 refers to the subject matter of the assignment as an "instruction"; whereas, it is, in fact, only an excerpt from an instruction. The excerpt taken alone is seriously objectionable, in that it assumed that the defendant "com-

mitted the act'' charged against him.   Nor is the instruction,
taken as a whole, any better.   It reads:

"The intent with which an act is committed being but a
mental state of the accused, direct proof of it is not required,
nor indeed can it ordinarily be shown; it is generally estab-
lished by all the facts and circumstances attending the doing
of the act complained of as disclosed by the evidence, and in
this case the intent with which the defendant committed the
act complained of must be determined by you from all the
evidence in the case."

The very first instruction given by the court was that the
defendant was charged with "stealing a cow, the property of
one George Graham." In a later instruction the jury were
told the felonious stealing, taking, carrying, leading or driv-
ing away a cow the property of another was grand larceny.
"The act complained of" was the stealing of a cow, and in
this quoted instruction the jury were told that:

"The intent with which the defendant committed the act
complained of must be determined" by them from all the
evidence in the case.

Of course the intent with which an act is done is important
in determining whether the act was criminal or not, and in
this case, if the defendant had admitted killing the animal
and claimed as a defense that it belonged to him, or his co-
defendants, or that it had been killed by mistake, the instruc-
tion given would have been applicable. But the defendant
denied killing the cow, or having anything to do with it.
That was the controlling issue. It was a question of fact for
the jury. That the defendant's evidence was weak and im-
probable did not authorize the court to assume and state to
the jury in his instruction that the "defendant committed
the act complained of." In the circumstances of this case,
the larcenous intent was conclusively shown. The all-impor-
tant question was, Who killed the cow? For whoever killed it
did so with the felonious intent to steal. The court had no
right to assume in the instruction given that the "defendant
committed the act complained of," for in doing that, in effect,
the jury was told that the defendant was guilty as charged.

Where a fact is incontrovertibly proved and wholly un-
disputed, there exists no reason prohibiting the court from

XVI Ariz.—9

so stating in the instruction given. In *People* v. *Putnam,* 129 Cal. 258, 61 Pac. 961, the rule is stated:

"An instruction which assumes a fact as provided will not warrant a reversal if the fact is admitted, or there is no shadow of conflict of evidence with respect to it." *Stewart* v. *Territory,* 2 Okl. Cr. 63, 100 Pac. 47; *Bartell* v. *State,* 4 Okl. Cr. 135, 111 Pac. 669; *State* v. *Watson,* 47 Or. 543, 85 Pac. 336.

If a fact is controverted, and the evidence concerning its existence is in conflict, it is error for the court to assume its existence in the instruction to the jury. *Territory* v. *Kay,* 3 Ariz. 92, 21 Pac. 152; *State* v. *Lewis,* 56 Kan. 374, 43 Pac. 265; *People* v. *Lang,* 104 Cal. 363, 37 Pac. 1031; *People* v. *Matthai,* 135 Cal. 442, 67 Pac. 694; *Heivner* v. *People,* 7 Colo. App. 458, 43 Pac. 1047; *State* v. *Allen,* 34 Mont. 403, 87 Pac. 177; *State* v. *Mackey,* 12 Or. 154, 6 Pac. 648.

Section 12, article 6, Arizona Constitution, reads:

"Judges shall not charge juries with respect to matters of fact nor comment thereon, but shall declare the law."

The instruction we are considering clearly violates both the spirit and language of this provision of our fundamental law. The trial judge is forbidden the right to charge with respect to matters of fact, or to comment on the facts. The facts and what they prove or disprove are for the sole consideration of the jury. As was said in *State* v. *Whitney,* 7 Or. 390:

"It is the exclusive province of the jury to determine questions of fact. They, and they only, have a right to judge of the credibility of witnesses, and the weight and effect of their testimony. And it has always been held to be an erroneous instruction when the court assumed any controverted fact to be proven, instead of submitting to the jury the question whether or not it has been established by the testimony before them."

It is said in *People* v. *Dick,* 32 Cal. 216: "It would be better for the court [in charging the jury in a criminal case] to avoid assuming any material fact . . . as proved, however clear to the mind of the judge such fact may seem to be established, because it is the province of the jury, unaided by the judge, to say whether a fact is proved or otherwise."

Where the exclusive province of the jury is invaded by the court, as in this case, however much we may regret the duty of reversing, we feel that there is no other course open to us. We cannot say, as a matter of fact, that the court's announcement that the "defendant committed the act complained of" had no effect on the jury. Ordinarily the opinion of the judge as given from the bench in the trial of causes has great influence with the jury, and, while our Constitution provides that "no cause shall be reversed for technical error in pleading or proceedings when upon the whole case it shall appear that substantial justice has been done" (section 22, article 6), it seems to us that to hold no prejudice is shown in this case would be doing violence to the other provisions of the Constitution guaranteeing the right of trial by jury, and prohibiting the judge from charging the jury in respect to matters of fact, or from commenting on the facts.

Nor do the instructions, taken as a whole, cure the error complained of. It is true the court instructed the jury that they were the sole judges of the facts in the case; but almost in the same breath he told them that the "defendant committed the act complained of," and that it was for them to determine his intent from all the evidence in the case.

The court refused to give the requests numbered 12, 13, 14 and 15, quoted above, and asked by defendant. The instructions given do not cover the points desired to be submitted by these requests. The first proposition in request 12 is undoubted law, and, standing alone, should have been given; but the last sentence is too restricted, as the defendant might not himself, or with others, have killed the animal, or been concerned in carrying the meat away, and still be guilty of the larceny of the animal. For the same reason, the court correctly refused request No. 13. The facts and circumstances detailed in request No. 14 are not sufficient to justify a conviction; but, if true, we think they should be considered in connection with all the rest of the evidence, and, in that view of it, it was properly refused. Request No. 15 does not contain a correct statement of the law. Joint possession or possession with others may be evidence of guilt, depending upon the facts of the case. The evidence of the meat being cached near defendant's tent, and of tracks leading from tent to the cache, was certainly competent as tending to show

claim of control and ownership of the meat by the persons occupying the tents.

Judgment reversed and case remanded for new trial.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.