[Crim. No. 1126. Second Appellate District, Division One.—February 18, 1925.]

## THE PEOPLE, Respondent, v. R. H. W. ALBREXSTON-DARE, Appellant.

[1] CRIMINAL LAW—MEDICAL PRACTICE ACT—TREATMENT OF PATIENT—CO-OPERATION BY MEMBERS OF PATIENT'S FAMILY—KNOWLEDGE OF ABSENCE OF QUALIFICATIONS—ACCOMPLICES.—The members of a patient's family who, with knowledge of the fact that one treating the patient is not a physician, nor licensed to practice medicine within the state, co-operate with him in the treatment of the patient, are accomplices whose testimony requires corroboration in a prosecution against the alleged practitioner for a violation of the Medical Practice Act. (On denial of hearing by supreme court, approval withheld.)

[2] ID.—ACCOMPLICE—KNOWLEDGE—EVIDENCE.—In a prosecution for practicing a mode or system of treating the sick and afflicted without having a valid unrevoked certificate or license from the state board of medical examiners so to do, the defendant was entitled to have the jury determine whether or not the members of the patient's family who testified in the case had knowledge of the fact that defendant was not a physician and not licensed by the state board of medical examiners to practice "a mode or system of treating the sick and afflicted."

---

Application of statutes regulating practice of medicine to healers, notes, 98 Am. St. Rep. 742; 3 L. R. A. (N. S.) 763; 24 L. R. A. (N. S.) 103; 25 L. R. A. (N. S.) 1297; L. R. A. 1917C, 827. See, also, 20 Cal. Jur. 1066.

[3] ID.—ACCOMPLICE—EVIDENCE.—In such a prosecution, even if it be assumed as an established principle of law affecting the trial of the case that defendant should have been permitted to show the guilty knowledge on the part of the persons who assisted him in the treatment of the patient as to defendant's lack of statutory qualifications to practice a "system of treating the sick and afflicted," and that defendant was entitled to have the jury fully instructed regarding the subject of "accomplices," the failure and refusal of the trial court to recognize such rights in defendant and appropriately to accord to him the full measure thereof was not prejudicial error, where the point which was covered by the testimony of the "accomplices" was that defendant administered medical treatment to the patient, and testimony to the same effect was given by other witnesses who were not accomplices.

[4] ID.—EVIDENCE—SECTION 4½, ARTICLE VI, CONSTITUTION.—In such prosecution, although serious errors in the matter of the testimony of the "accomplices" occurred in the trial, such errors .did not result "in a miscarriage of justice," and under section 4½ of article VI of the constitution must be disregarded.

[5] ID.—ACCOMPLICE—CORROBORATION—REFUSAL OF INSTRUCTION.—In such prosecution, the trial court did not err in refusing to give an instruction requested by defendant dealing with a definition and illustration of the meaning of the word "corroboration," where the only purpose of such an instruction would be that of more fully informing the jury with reference to the law of accomplices, and the question of whether or not the accomplices were corroborated became immaterial because sufficient uncontradicted evidence remained to justify and demand the verdict against defendant.

[6] ID.—COMPENSATION FOR SERVICES—EVIDENCE—INSTRUCTIONS.—In such prosecution, the trial court properly refused instructions requested by defendant, the apparent object of which was to bring about an acquittal of defendant because the evidence perhaps was not deemed conclusive that defendant had received compensation for his services.

[7] ID.—REMARK OF TRIAL COURT—INSTRUCTIONS.—In such prosecution, where no objection was made by defendant to a remark of the trial court, made in the presence of prospective jurors in connection with a motion by defendant for postponement of the hearing of the case, that such proceeding appeared to be "some kind of a scheme to put this trial off rather than to get justice," nor was any motion ever made by defendant to strike such remark from the record, even if it be admitted that the defendant is not too late to complain of said remark, the situation was covered by the court's instruction to the jury during the course of the trial that "all conversations between counsel

and the court or between counsel have nothing to do with the case and is not for your consideration."

[8] Id. — Defendant as Witness — Credibility — Instruction. — In such prosecution, it was error to give an instruction "that while the defendant in a criminal action is not required to take the stand and testify, yet, if he does so, his credibility, and the value and effect of his evidence are to be weighed and determined by the same rules as the credibility and effect and value of the evidence of any other witness is determined. If a defendant elects to take the stand and testify in his own behalf, his testimony is to be weighed in the same manner and measured according to the same standard as the testimony of any other witness, and the tests for determining credibility of witnesses as given you in another part of the instructions are to be applied to his testimony alike with that of all other witnesses. No greater presumption attaches in favor of his testimony than attaches to that of any other witness"; but such error was not harmful to defendant.

[9] Id.—Compensation—Immateriality of.—In such prosecution, the matter of compensation for services of the nature of those alleged to have been performed by defendant was wholly immaterial, from which it would follow that whether or not defendant received any consideration in compensation for his services as a physician was of no consequence, so far as establishing the violation of the terms of the penal statute was concerned.

---

(1) 16 C. J., p. 674, n. 2.    (2) 16 C. J., p. 678, n. 64, p. 928, n. 79. (3) 17 C. J., p. 335, n. 9.    (4) 17 C. J., p. 368, n. 5.    (5) 16 C. J., p. 1001, n. 5.    (6) 30 Cyc., p. 1569, n. 5.    (7) 17 C. J., p. 62, n. 93, p. 296, n. 99.    (8) 16 C. J., p. 1039, n. 84; 17 C. J., p. 339, n. 64. (9) 30 Cyc., p. 1564, n. 56.

APPEAL from a judgment of the Superior Court of Orange County and from an order denying a new trial. Z. B. West, Judge. Affirmed.

The facts are stated in the opinion of the court.

John L. Richardson, Wm. J. Clark and Otto Sanaker for Appellant.

U. S. Webb, Attorney-General, Erwin W. Widney, Deputy Attorney-General, and A. B. Bianchi for Respondent.

HOUSER, J.—Defendant was convicted of the crime of practicing a mode and system of treating the sick and afflicted without having a valid unrevoked certificate or license

from the board of medical examiners of the state of California so to do.

The evidence shows that two young women of different families were the subjects of defendant's ministrations, and that he was actively assisted therein by the members of their respective families.

Many reasons are urged by appellant for a reversal of the judgment and the order denying defendant's motion for a new trial. Among them are the following:

(1) That the court erred in its refusal to grant defendant's motion for a continuance of the trial of the action against him; and that because of such refusal defendant was unable to procure the attendance of certain witnesses who would have testified in effect that they told all the different members of the family of one of the said two patients of defendant that he (defendant) "was not a physician nor licensed to practice medicine; that he would not attempt to treat a patient as a physician; . . . that he had made a study and had conducted research work in dietetics; that he did not profess any medical skill; that he would not examine or treat the patient, nor would he make any suggestions as to such patient's diet, without the presence and approval of such patient's physician."

(2) That the court erred in sustaining objections made by the prosecution to questions asked by defendant of witnesses, both on direct examination and on cross-examination, which questions, had they been answered by such witnesses, would have proved, or at least tended to prove, that at all times when defendant either treated or attempted to treat the said two patients all the members of their respective families had knowledge of the fact that defendant was not a physician nor licensed to practice medicine within the state of California.

(3) That the court erred in refusing to give to the jury certain instructions requested by defendant relating to the law appertaining to accomplices.

[1] The theory upon which each of such points is presented is that the several members of the family of the patient, having prior knowledge of the fact that defendant was not a licensed medical practitioner within this state, and they with such knowledge having co-operated with de-

fendant in the treatment of the patient, these facts brought
them within the rule that one who in any manner, know-
ingly and with criminal intent, aids and abets another in the
commission of a criminal act is as guilty of the offense as
is the person who actually commits it, and consequently
that the members of the family who, with such knowledge
of the facts, assisted defendant in the treatment of the
patient were accomplices of defendant, and that their testi-
mony was subject to the statute which required that before
defendant could be convicted on the testimony of accom-
plices it was necessary that it be corroborated by evidence
which tended to connect defendant with the commission of
the offense. The entire question in that regard, therefore,
revolves around the solution of the problem of whether
or not the members of the family were accomplices of de-
fendant.

Section 31 of the Penal Code, so far as its provisions are
here applicable, is as follows: ''All persons concerned in
the commission of a crime, . . . whether they directly com-
mit the act constituting the offense, or aid and abet in its
commission, or, not being present, have advised and en-
couraged its commission, . . . are principals in any crime so
committed.''

Section 1111 of the Penal Code provides: ''A conviction
cannot be had upon the testimony of an accomplice unless it
be corroborated by such other evidence as shall tend to
connect the defendant with the commission of the offense;
and the corroboration is not sufficient if it merely shows the
commission of the offense or the circumstances thereof. An
accomplice is hereby defined as one who is liable to prose-
cution for the identical offense charged against the defend-
ant on trial in the cause in which the testimony of the ac-
complice is given.''

Considering, first, that both by the witnesses whose pres-
ence at the trial could not be had because of the refusal of
the court to grant a continuance of the hearing of the ac-
tion, and as well by questions which were propounded by
defendant on direct examination and on cross-examination
of other witnesses who testified on the trial, defendant
sought to establish the fact that all the members of the
family of one of the patients had been informed that de-

fendant was not a physician, nor licensed to practice medicine in this state, it is apparent that if the members of the family of the patient are not excluded from the general rule which makes an accomplice of one who with criminal intent assists in the commission of a criminal act, knowledge on the part of such members of the family of the nature or character of the act to be committed by defendant was an essential element in determining the question of whether or not such persons were accomplices. It is apparent that if the members of the family of the patient in good faith believed that defendant was a physician and licensed by the state board of medical examiners to act as such, their co-operation with defendant in treating the patient would not have been criminal. Their knowledge of defendant's lack of statutory qualifications in the premises was prerequisite to any constructive criminal intent on their part. Assuming such actual knowledge by the members of the family, and constructive knowledge on their part that the law forbade anyone to treat the sick without "then and there having a valid unrevoked certificate of license from the board of medical examiners of the state of California," it would seem probable that they occupied a position not differing in the law from that occupied by any person not a member of the patient's family who assisted in such treatment.

It may perhaps be considered a hard law which, without incurring severe legal consequences, will not permit the members of the family of an afflicted person to actively assist and co-operate with one who is not licensed to practice the medical profession in what may be an honest endeavor in good faith to alleviate human suffering. The belief may be strong and possibly well founded that such disqualified person may be able materially to assist in restoring the health of the patient, and yet the demands of the law are such that if the statute regulating such practice be disobeyed, all who aid and abet in the commission of the inhibited act shall be equally guilty with the one who actually commits it. The degree of blood relationship in which the members of the family stand to the patient cannot be a factor in determining whether or not the persons assisting in the unlawful act are subject to the provisions of the stat-

ute.  If it were not so, possibly a mother or a father who
actively assisted an unlicensed practitioner in the treatment
of a daughter of such parent might be immune from punish-
ment for an infraction of the statute; while a cousin or even
a brother or a sister of the patient would be compelled to
suffer the penalties imposed by the law.  The language of
the law is "*all* persons concerned in the commission of a
crime" who aid and abet in its commission are principals in
the crime so committed.  Neither would the worthiness of
the contemplated ultimate object of the act to be committed
in any manner affect the construction of the statute.  If the
father of his starving children should "aid and abet" or
encourage a highwayman in committing a robbery for the
express purpose of relieving the distress of the loved ones,
while perhaps no one would deny the existence of such ex-
tenuating circumstances as should possibly operate, partly
if not wholly, to excuse the commission of the crime, the
strict interpretation of the law would undoubtedly be that
the father by his assistance or encouragement was as much
a principal in the robbery as though he had assisted another
in the commission of any other offense against the criminal
statutes without such impelling motive on his part being
present.  In such circumstances the cry of the agonized
parent would not be heard to prevail as against the unsym-
pathetic words of the law.  And so here, assuming that the
members of the family of the patient in the highest good
faith were engaged in the praiseworthy business of attempt-
ing to alleviate the suffering or to effect a permanent cure,
of the afflicted one, yet the language of the statute and the
decisions of the courts do not permit of the exercise of
discretion as to when or under what circumstances the letter
of the law may be disregarded.

The constructive criminal intent of the members of the
family of the patient was a very important factor in de-
termining whether or not such persons were accomplices of
defendant.  Section 1111 of the Penal Code contains the
definition that an accomplice is "one who is liable to prose-
cution for the identical offense charged against the defend-
ant on trial in the cause in which the testimony of the ac-
complice is given."

[2] It therefore should have become a question in the instant case for the determination of the jury whether or not the members of the patient's family had knowledge of the fact that defendant was not a physician and not licensed by the state board of medical examiners of this state to practice "a mode or system of treating the sick and afflicted." Without attempting to determine the question of defendant's legal right to a continuance of the hearing of the action against him, if defendant was not afforded a reasonable opportunity to prepare his defense by subpoenaing witnesses who would testify that they informed the members of the patient's family who assisted defendant in his treatment of such patient that defendant was not so licensed to practice as a physician in this state; and if, as appears from the record, defendant was likewise prevented by the court from establishing such fact by means of questions propounded to other witnesses on their direct examination or on cross-examination, it is clear that, in the absence of other controlling conditions, defendant's substantial rights were invaded. In addition thereto, if, as also appears from the record, the court refused to instruct the jury with reference to the law of accomplices, and especially that part thereof which requires that "a conviction (of a defendant) cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense," it is likewise apparent, assuming that no countervailing circumstances were present, that the rights of defendant were not safeguarded as by the law entitled.

[3] But even if it be assumed as an established principle of law affecting the trial of the case that defendant should have been permitted to show the guilty knowledge on the part of the persons who assisted him in the treatment of the patients as to defendant's lack of statutory qualifications to practice a "system of treating the sick and afflicted," and that defendant was entitled to have the jury fully instructed regarding the subject of "accomplices," the further question is presented as to whether or not the failure and refusal of the trial court to recognize such rights in defendant and appropriately to accord to him the full measure thereof was

error of such nature and extent as should result in the granting to defendant of a new trial.

The point which was covered by the testimony of the "accomplices" was that defendant administered medical treatment to the patient. Evidence which came from the testimony of witnesses of whom it is not claimed that they were accomplices was to the same effect. To very briefly summarize:

Arthur C. Merrick testified that on several occasions he drove defendant to the patient's home; that on other occasions, at defendant's request, he delivered at the home of the patient small boxes "wrapped up with some stuff" of which defendant said they were "to follow the inscription on it."

Dr. Marsden, who was a physician and suregon, testified that on one occasion he met defendant at the home of the patient, and that at that time, in answer to a request by the witness of defendant that he "outline his treatment," defendant stated that he "manufactured his own medicines."

Alice Anderson, who was a practical nurse in attendance upon the patient, testified that defendant ordered the witness to give, and that under his direction she gave, to the patient certain medicines which were contained in probably ten or twelve different boxes and bottles which defendant brought to the home of the patient.

Florence D. Smiley testified that she overheard a conversation between the sick girl and defendant in which conversation defendant stated to the patient, "Take this medicine, Myrtle, take it and you will get better"; and at that time that defendant "had a glass with some medicine, some brown liquid, in it."

It is clear that in the absence of any evidence to the contrary the combined testimony of these several witnesses was sufficient to establish the guilt of defendant beyond a reasonable doubt; and that without considering the evidence given by the "accomplices," if the jury conscientiously performed its duty, no conclusion other than that of guilt of defendant could have been reached. [4] Although serious errors in the matter of the testimony of the "accomplices" occurred in the trial of the action, such errors

did not result "in a miscarriage of justice"; and in accordance with the provisions of section 4½ of article VI of the constitution, it follows that, so far as the errors to which reference has been had are concerned, they must be disregarded. (*People* v. *Dial,* 28 Cal. App. 704, 707 [153 Pac. 970].)

Appellant complains that, although requested by defendant, the court refused to give to the jury certain instructions. A comparison of defendant's proposed instructions which were thus refused by the court with the instructions which the court gave to the jury impels the conclusion that (without important exceptions) in meaning and intent the jury was fully and fairly instructed as to all subjects presented in such refused instructions.

[5] The first refused instruction to which attention is directed deals with a definition and illustration of the meaning of the word "corroboration." The only purpose of such an instruction would be that of more fully informing the jury with reference to the law of accomplices. With that subject considered as being definitely out of the case, for the reason that, without the testimony of the "accomplices," sufficient uncontradicted evidence remained to justify and demand the verdict against defendant, the question of whether or not the accomplices were corroborated became immaterial. A similar situation is presented with reference to each of the many of defendant's other instructions on the same subject. As heretofore stated, while evidence should have been admitted touching the complicity of several of the witnesses with defendant in the commission of the offense, and in such event the jury properly instructed regarding such evidence, because of the fact that the remaining evidence in the case is so strong that in the absence of any contradictory evidence, without a violation of their oaths the jury could not do otherwise than find the defendant guilty—defendant's appeal in that regard must be considered as though such errors had not occurred.

[6] Several instructions which defendant requested the court to give to the jury, but which the court refused, in their substance attempted to place an interpretation on the language of the statute with reference to the phrase "practicing or attempting to practice any system or mode of

treating the sick or afflicted." The apparent object of such offered instructions was to bring about an acquittal of defendant because the evidence perhaps was not deemed conclusive that defendant had received compensation for his services. In the case of *People* v. *Vermillion*, 30 Cal. App. 417 [158 Pac. 504], it is held (syllabus): "The State Medical Act makes it unlawful for a person to practice any art of healing without having first obtained a certificate from the medical board, and the act is intended to cover such practice whether the service is gratuitous or not." The court was therefore right in refusing such instructions.

[7] As heretofore indicated herein, on the day when the action against defendant was set for trial defendant's counsel presented a motion for postponement of the hearing of the case. In the course of the hearing of such motion, in the presence of prospective jurors, the court remarked that the proceeding appeared to be "some kind of a scheme to put this trial off rather than to get justice." No objection was made by defendant to such statement; nor was any motion ever made by defendant to strike such remark from the record. Defendant did, however, offer a general instruction, which the court refused and which included the admonition to the jury that "if any expression of mine has seemed to indicate an opinion relating to any of these matters such expression must be entirely disregarded by you." In the course of the trial the court instructed the jury that "all conversations between counsel and the court or between counsel have nothing to do with the case and is not for your consideration." It is therefore apparent that, even if it be admitted that defendant is not too late to complain of the remark made by the court, the situation was covered by the court's instruction.

[8] At the request of the prosecution, the court gave the following instruction to the jury: "You are instructed that while the defendant in a criminal action is not required to take the stand and testify, yet, if he does so, his credibility, and the value and effect of his evidence are to be weighed and determined by the same rules as the credibility and effect and value of the evidence of any other witness is determined. If a defendant elects to take the stand and testify in his own behalf, his testimony is to be weighed in

the same manner and measured according to the same standard as the testimony of any other witness, and the tests for determining credibility of witnesses as given you in another part of the instructions are to be applied to his testimony alike with that of all other witnesses. No greater presumption attaches in favor of his testimony than attaches to that of any other witness.''

By a long line of authorities the giving of such an instruction is held to constitute error. (*People* v. *Faulke,* 96 Cal. 20 [30 Pac. 837]; *People* v. *O'Brien,* 96 Cal. 182 [31 Pac. 45]; *People* v. *Curry,* 103 Cal. 548 [37 Pac. 503]; *People* v. *Lang,* 104 Cal. 368 [37 Pac. 1031]; *People* v. *Anderson,* 105 Cal. 35 [38 Pac. 513]; *People* v. *Hertz,* 105 Cal. 663 [39 Pac. 32]; *People* v. *Shattuck,* 109 Cal. 681 [42 Pac. 315]; *People* v. *Van Ewan,* 111 Cal. 152 [43 Pac. 520]; *People* v. *Boren,* 130 Cal. 210 [72 Pac. 899]; *People* v. *Fritz,* 54 Cal. App. 137 [201 Pac. 348]; *People* v. *Maughs,* 149 Cal. 253 [86 Pac. 187].)

Defendant was a witness in his own behalf. The only testimony which he gave on direct examination was the following: ''Q. Mr. Albrexstondare, are you a physician licensed to practice in the state of California? A. No, sir.'' And on cross-examination his testimony was as follows: ''Q. Have you ever been convicted of a felony? A. No, sir.''

Of course, appellant cannot argue that defendant's credibility as a witness was so affected by the giving of the instruction in question that his statement on his direct examination that he was not a physician, licensed to practice in the state of California, was disbelieved by the jury, for the reason that such disbelief on the part of the jury would have resulted in defendant's acquittal. As to the testimony given by defendant on cross-examination that he had never been convicted of a felony, even though the jury disbelieved it, the only effect of such disbelief would have been that it would have tended to discredit defendant's testimony in his statement on direct examination that he was not a physician licensed to practice in the state of California. It therefore follows that no harm resulted to defendant by the giving of such instruction.

Appellant further complains that the court erred to defendant's prejudice in the admission in evidence of testi-

mony going to show the delivery to defendant of a certain check which it appears was given in partial payment of defendant's services. The principal objection in connection therewith is that no competent evidence was introduced showing that defendant cashed the check. [9] According to the rule laid down in the case of *People* v. *Vermillion,* 30 Cal. App. 417 [158 Pac. 504], the matter of compensation for services of the nature of those alleged to have been performed by defendant is wholly immaterial, from which it would follow that whether or not defendant received any consideration in compensation for his services as a physician was of no consequence, so far as establishing the violation of the terms of the penal statute was concerned.

The judgment and the order denying defendant's motion for a new trial are affirmed.

Conrey, P. J., and Curtis, J., concurred

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 16, 1925, and the following opinion then rendered thereon:

THE COURT.—Appellant's petition to have the above-entitled cause heard and determined by this court after judgment in the district court of appeal is denied.

We neither approve nor disapprove the conclusion of that court that under the circumstances outlined in the opinion the members of the patient's family would be accomplices if they had knowledge of the fact that the defendant did not have a license to practice medicine. We do not deem it necessary to express an opinion upon that question at this time.

Myers, C. J., Lawlor, J., Waste, J., and Shenk, J., concurred.

Lennon, J., and Seawell, J., concurred in the denial of the petition for hearing by this court.