[Filed April 6, 1885.]

# THE STATE OF OREGON *v.* MARTIN MACKEY AND WM. MACKEY.

NEW TRIAL — DISCRETION — APPEAL. — A motion for a new trial upon the ground of the insufficiency of. the evidence to justify the verdict is addressed to the sound discretion of the court in which it is made, and cannot be reviewed on appeal.

EVIDENCE — IMPEACHING WITNESS — HOSTILE DECLARATIONS. — There is no difference in principle between admitting declarations of hostility of a witness, for the purpose of affecting the value of his testimony, and admitting contradictory statements for the same purpose.

ID. — DECLARATIONS OF PARTY AS TO PHYSICAL CONDITION. — The declarations of a party are received to prove his physical condition and symptoms, whether arising from sickness or injury.

CRIMINAL LAW — INDICTMENT — PLEA OF NOT GUILTY — CHARGE TO THE JURY. — The plea of not guilty puts in issue every material allegation in an indictment. An instruction that " the State has fully established " the fact of the killing, and that " the only material allegation about which there is any dispute is that which charges these defendants with having purposely and of· deliberate and premeditated malice caused the death of," etc., is error. The killing of deceased by the defendants must be found by the jury before the question of premeditation or malice could arise.

JOSEPHINE COUNTY. Defendants appeal. Reversed and new trial ordered.

The facts sufficiently appear in the opinion.

*P. P. Prim*, and *J. F. Watson*, for Appellants

The court erred in not allowing John Mack to answer the impeaching question asked him by the defense, as follows:— " Did you not say to George and William Wimer the day following the examination, at their store in Waldo, no other parties being present, that there was not evidence enough to hold

the G— d— Mackeys, but you intended to send them to jail and then hunt up the evidence?" (1 Wharton Ev. 408, 527, 545; *Day* v. *Stickney,* 14 Allen, 255; *Harper* v. *Lamping,* 33 Cal. 647; *Newton* v. *Haines,* 6 N. Y. 345.) Also in sustaining the objection to the following question asked by defendants' counsel of A. J. Henderson: "Did not Martin Mackey, on account of his physical condition, decline to go up and show you the claim on the morning of the second day?" (*State* v. *Glass,* 5 Oreg. 73; *Insurance Co.* v. *Mosley,* 8 Wall. 397; *Commonw.* v. *Fenno,* 134 Mass. 217.) If the verdict was clearly against the evidence, it was an abuse of discretion to overrule the defendants' motion for a new trial. (*People* v. *Jones,* 31 Cal. 566–571; 1 Greenl. Ev. 49; *Reynolds* v. *People,* 41 How. Pr. 179.) The court erred in giving the following instructions: "It is charged in the indictment that Michael Purcell was killed on the 26th day of June, 1884, but it is sufficient if it be shown that the killing was done at any time prior to the finding of this indictment, that is, the 29th day of October, 1884. This the State has fully established. The State has also fully proved that Michael Purcell came to his death in Josephine County, Oregon, by having been shot with a gun. The only material allegation of said indictment about which there is any dispute is that which charges these defendants with having purposely and of deliberate and premeditated malice caused the death of Michael Purcell." (*State* v. *Whitney,* 7 Oreg. 386; *State* v. *Grant,* 7 Oreg. 414; *People* v. *Dick,* 32 Cal. 213; *Weyrich* v. *People,* 89 Ill. 90.)

*Thos. B. Kent, District Attorney,* and *Wm. H. Holmes,* for Respondent.

LORD, J.—The defendants, father and son, were indicted jointly and tried jointly for the crime of murder, found guilty, and sentenced to be hanged. The bill of exceptions purports to contain, in substance, the whole testimony, and the first point suggested is the insufficiency of the evidence to justify the verdict. This alleged error applies to the denial of the defendants' motion for a new trial. There are cases in which it has been

held that a motion for a new trial is addressed to the sound discretion. of the court below, and that the overruling of such a motion will not be reviewed unless there is a plain abuse of such discretion. This is conceded, but it is earnestly and strenuously insisted that the evidence is so manifestly insufficient, and particularly as against the son, to sustain the verdict, that it falls within the rule laid down in those cases which would authorize the court to review and set aside the verdict. But a different doctrine seems to have been held by this court. in *Hallock* v. *City of Portland*, 8 Oreg. 29. PRIM, J., in delivering the opinion of the court, said:—

"As the motion for a new trial was based·wholly upon the insufficiency of the evidence to justify the finding of fact, the granting of the motion was a matter resting wholly in the discretion of the court below, and cannot be reviewed on appeal." (*State* v. *Wilson*, 6 Oreg. 428; *State* v. *Fitzhugh*, 2 Oreg. 227.; Hil. N. T. 7; *Pomeroy's Lessee* v. *Bank of Indiana*, 1 Wall. 597; *Pennsylvania M. Co.* v. *Brady*, 14 Mich. 260; *Boykin* v. *Perry*, 4 Jones (N. C.) 325.)

It is true, the evidence against the defendants is wholly circumstantial; and there can be no doubt but what that portion of it which relates to the son is extremely slight upon which to found a verdict. But the authorities cited indicate that such matter is not reviewable on appeal.

It is next assigned as error that the court erred in not allowing John Mack to answer the impeaching question asked him by the defense, if he had not said to one Miner—the time, place, and parties present being stated—that there was not evidence enough to hold the G— d— Mackeys, but that he intended to send them to jail and to hunt the evidence afterwards. The object of this evidence was to impair the force of the witness' testimony as showing that he entertained hostile or embittered feelings against the defendants. He was the magistrate who had bound the parties over, and a witness for the prosecution. The ends of justice are best attained by allowing a free and ample scope for scrutinizing evidence and estimating its real value. The question put contained all proper informa-

tion as to time, place, and persons present, and the precise matter which was to be used against him; so, in the event he should admit having made such declaration, an opportunity would be afforded him to rebut or explain it.   There is no distinction, so far as the rule is concerned, between admitting declarations of hostility of a witness for the purpose of affecting the value of his testimony, and admitting contradictory statements for the same purpose, as in either case an opportunity should be given the witness to explain what he said.   The witness should have been allowed to answer the question; to say whether he did or did not make the alleged statement; or, if he did, to make his explanation of it.   By so doing the jury would have been put in a position of estimating the real value of his testimony; of determining whether he was an impartial witness, testifying without prejudice or passion, or, in fact, a hostile witness, whose prejudices and passion had colored his testimony, and requiring it to be closely scrutinized and weighed.

It is next objected that the court erred in sustaining the objection of the State to the question asked by the defense of A. J. Henderson, whether or not Martin Mackey did not decline, on account of his physical condition, on two days, to go out and show the claim.   It appears at the June election, previous to the time indicated in the question, that Mackey had been severely beaten and bruised by the deceased, and that he was some time in recovering from the effects of it, and regaining his accustomed strength and health; that before he had entirely recovered some parties desired to purchase his mining claim and went to his cabin to see him, and it was proposed to show by the question that he was then in such a debilitated physical condition as caused him to decline to go out and show the mine, which was some distance off.   The ultimate object of the evidence was to show that his physical weakness was such at the time of the murder that, considering the distance from his cabin, he would have had to travel over a rough and brushy trail across the mountains to the cabin where the deceased was killed; that it could not reasonably be attributed to him; in other words, if believed, it would have been a circumstance

which would have gone far to prove that he did not commit the crime. It seems that he wanted to sell his mine, and if he was unable or declined to accompany the parties for the purpose of examining it, because of his physical debility, his complaints of a present existing pain or malady would be admissible. The declarations of a party are received to prove his condition, ills, pains, and symptoms, whether arising from sickness, or an injury by accident or violence.

It is also objected that the court erred in not allowing the cross-questions asked by the defense of Charles Hughes, County Clerk, as follows:

"Did Mr. Thompson go to you at the time you stated, and ask to see the boots in your possession (referring to Mackey's boots), said to belong to Mackey, and did he not, after examining them, exclaim, "that is all right?"

The boots which Mackey wore were in the possession of the officer, and were used in the prosecution as one of the strong circumstances in the case as connecting the elder defendant with the crime, and we think the witness should have been allowed to answer the question.

The next objection is to an instruction of the court as follows:—

"It is charged in the indictment, as I have said, that Michael Purcell was killed on the 26th day of June, 1884, but it is not necessary for the State to prove that, or any other particular date in that connection; and it is sufficient if it be shown that the killing was done at any time prior to the finding of this indictment; that is, the 29th day of October, 1884. *This the State has fully established.* The State has also fully proved that Michael Purcell came to his death in Josephine County, Oregon, by having been shot with a gun." "The only material allegation of said indictment about which there is any dispute is that which charges these defendants with having purposely, and of deliberate and premeditated malice, caused the death of Michael Purcell."

The effect of this instruction was virtually to take away from the consideration of the jury the only real disputed question in

the case.   It states that "it is sufficient if it be shown that the killing was done at any time prior to the finding of the indictment"; and then adds, "this the State has fully established." The defendants had pleaded not guilty to the indictment, and this put in issue every material allegation, and the proof of them devolved upon the State.   The killing of the deceased by the defendants was the fact in dispute, and must necessarily be found by the jury before the question as to whether it was done premeditatedly or not could arise.   It was a fact for the jury to find, and belonged exclusively to their province to determine from the evidence.   But this fact the court withdraws from their consideration by instructing them it is fully established, and that the only question about which there is any dispute is that which charges the defendants with having purposely, and of deliberate and premeditated malice, caused the death of Michael Purcell.   The effect of the instruction was admitted at the argument, but it was sought to avoid it by the statement that this fact was expressly admitted by the counsel for the defendants in making his opening statement.   But we do not thus understand the record, nor think any such admission was intended or meant, upon the facts disclosed by the record.   The fact that Purcell had been killed was admitted.   He had been found dead in his cabin, and evidently shot to death by someone.   A coroner's jury had performed its office over his remains, and the fact that Michael Purcell was killed was well known and generally admitted.   And this is all Judge Hanna's statement amounted to.   He admitted that Michael Purcell had been killed, but he did not admit that the defendants had done the deed.   The doing of the deed was the fact in dispute, and which the defendants had denied by their plea to the indictment.   By the indictment the defendants were not only charged with the killing of the deceased, but doing it with malice and premeditation.   These were facts to be proved by the State, and to be found by the jury upon the issue joined.

The killing of Michael Purcell by the defendants was, therefore, one of the principal facts in dispute, and which it was the duty of the jury to determine from the evidence.   It was

for them to say whether the evidence fully established this fact, and not for the court. And this is rendered all the more mischievous and dangerous from that which follows, that "the only material allegation about which there is any dispute is that which charges the defendants with having purposely caused the death of Michael Purcell." There is no other question, because the killing of the deceased by the defendants being fully established, the only remaining question was whether it was done with malice and premeditation. This was consistent with what had preceded; and as the killing had been fully established in the opinion of the court, it was natural that this fact should have been assumed, and the attention of the jury directed to the only question about which there was any dispute. In *People* v. *Dick*, 32 Cal. 216, the court say:—

"It is better for the court, in charging the jury in a criminal case, to avoid assuming any material fact as proved, however clear to the mind of the court such fact may seem to be established, because it is the province of the jury, unaided by the judge, to say whether a fact is proved or otherwise."

And in *State* v. *Whitney*, 7 Oreg. 309, Kelly, C. J., said:—

"It is the exclusive province of the jury to determine questions of fact. They and they only have a right to judge of the credibility of witnesses, and the weight and effect of their testimony. And it has always been held to be an erroneous instruction when the court assumed any controverted fact to be proven, instead of submitting to the jury the question whether or not it has been established by the testimony before them."

The judgment must be reversed, and a new trial ordered.