[Filed April 2, 1890.]

# T. A. McBRIDE, Executor, Respondent, v. NORTHERN PACIFIC R. R. Co., Appellant.

DEATH AFTER JUDGMENT—EFFECT OF ON RIGHT OF APPEAL.—A suit is suspended during the period between the death and the order granting a continuance, and this period is not to be deemed any part of the time limited for taking an appeal.

RAILROAD CROSSING—DUTY OF TRAVELER TO LOOK AND LISTEN.—It is the duty of a traveler to look and listen before attempting to cross a railroad track, and especially at a crossing known to him to be dangerous from its obstructed view and the conformation of its surroundings rendering it difficult to hear.

EVIDENCE—PRESUMPTION, WHERE THE RECORD IS SILENT.—Where there is no direct evidence that a traveler did not stop, look and listen before he entered upon the crossing, the presumption of law is that he did his full duty and observed the precautions which it prescribed.

RAILROAD CROSSING—MUTUAL DUTIES.—While it is the duty of travelers when about to cross a railroad track to exercise proper care and caution by using their sense of sight and hearing, it is likewise the duty of those to whom is committed the control and supervision of the movements of the train to exercise such care and caution at such crossings, and to give the warning signals so as to prevent injury to those traveling on the highway.

REFUSAL OF NEW TRIAL—NOT APPEALABLE ERROR.—The granting or refusing of a motion for a new trial rests wholly in the discretion of the court and cannot be reviewed upon appeal.

APPEAL from Columbia county: F. J. TAYLOR, judge.

LORD, J., delivered the opinion of the court.

This was an action brought by Mariam Benham, as administratrix of her husband, John L. Benham, deceased, against the defendant company for negligently causing the death of plaintiff's intestate by running over him with a locomotive while he was crossing the defendant's railroad at a public crossing.

The answer denied the negligence alleged, and set up that the injury of which complaint is made was caused by the contributory negligence of the plaintiff.

The reply denied the new matter, and issue being then joined, a trial was had, which resulted in a verdict and judgment for the plaintiff on the eighteenth day of May, 1888. A preliminary question is raised by the defendant on a motion to dismiss the appeal, on the ground that the appeal was not brought within the six months limited to take an appeal.

The facts upon which this motion is predicated are these:

On the second day of July, 1888, the original plaintiff, Mariam Benham, sole representative of John L. Benham, died, leaving a will, in which the present plaintiff, T. A. McBride, was named as executor, and on the thirteenth day of July, 1888, the will was admitted to probate, and letters testamentary were issued to him.   On the tenth day of October, 1888, the second day of the term of the circuit court for Columbia county, next following the judgment, the defendant moved the court that T. A. McBride, executor as aforesaid, be substituted as · plaintiff in the action, showing, in an affidavit in support of the motion, the death of Mariam Benham and the appointment of the said T. A. McBride as her executor, and stating the reason for which the substitution was asked to be to enable the defendant to perfect its appeal from the judgment in this action, which was resisted by the executor McBride and denied by the court.   At the ensuing term of that court in 1889 the executor McBride moved for his own substitution, upon the ground alleged in his affidavit, to enable him to issue execution to enforce the payment of said judgment. The order of substitution was granted on the fourteenth day of May, 1889, and in a few days thereafter notice of appeal from said judgment was served upon him, and he now moves as plaintiff to dismiss the appeal for the reason that the record discloses that the appeal was not taken within the six months prescribed by law.

The Code prescribes in the case of the death of a party that the court may at any time, within one year thereafter, on motion, allow the action to be continued by or against personal representatives, or successors in interest.   Hill's Code, § 38.

The death of a sole plaintiff suspends the right to execution, and the suit is suspended during the period between the death and the order · allowing the continuance of the suit, and that period is not to be deemed any part of the time limited for taking an appeal.  *Dick* v. *Kendall*, 6 Or. 166.

The counsel for the plaintiff admits that the decision in this case is in the teeth of his contention, and must be

overruled to sustain his position, but the facts, as disclosed by this record, so strongly serve to show and recommend the equity and justice of that decision that we have no disposition to overturn or overrule it until better advised.

To return to the error assigned, the record discloses that in the progress of the trial, when the plaintiff had rested, the counsel for the defendant moved for a judgment of non-suit upon the ground that the testimony for the plaintiff failed to prove a cause sufficient to be submitted to the jury, and this constitutes the first assignment of error. The question, then, which we are called upon to decide is, whether the facts submitted in evidence by the plaintiff were insufficient to warrant a verdict. Where there is no evidence for the plaintiff, or such a defect in it as the law will not permit a verdict to be given to him, it is the duty of the court to grant a judgment of non-suit. But in deciding this question it is to be kept in mind that the evidence for the plaintiff stands admitted and undis puted, and concedes every fair inference which may be drawn from it, and that the defendant, conceding this, claims that it is so defective or insufficient in law to prove the cause of action alleged as not to authorize its submission to a jury or to warrant a verdict. The defect or insufficiency of the evidence consists, not so much in a want of evidence as that the evidence for the plaintiff, which established negligence of the defendant, also proved negligence on the part of the decedent contributing to that result.

The testimony for the plaintiff shows that the intestate was a careful and thrifty farmer who resided in the vicinity of the crossing where the injury and his death occurred and was familiar with its location and surroundings; that he was run over by the locomotive while crossing the railroad with his team at its intersection with the county road and found dead a few moments thereafter, and that no one was with him at the time of the accident. It further shows that about a half a mile above the point where the acci-

dent occurred the railroad track runs through a cut at the foot of a bluff, while the county road runs along parallel to the track and some two hundred yards distant from it on the top of the bluff; that as the county road nears the crossing it approaches somewhat closer to the track, and when about one hundred yards from the crossing it makes a turn toward the track and approaches it at right angles, but the view of the track is obstructed until very near it, that the track makes a bend near the crossing, about two hundred feet above it so that the smoke stack of the locomotive can only be seen about that distance; that the county road comes down a declivity until it reaches the track and crosses the grade; that a man traveling with his team along the county road on the bluff would not be likely to hear a train on the track below, unless it sounded the whistle, although the opinion is expressed, if the team was standing still and there was no noise from the wagon that a train might be heard, but even this was dependent on how the wind was blowing. The testimony further shows that the whistle was not sounded, but it does not disclose whether the bell was rung or not; that the train was running at a high rate of speed when it approached the crossing and the accident happened. The conclusion to be drawn from these facts may be thus summarized: that the decedent was a man of ordinary faculties and of prudent habits; that he was acquainted with the railroad crossing and its surroundings; that the crossing was more than ordinarily dangerous—a blind crossing—where the surroundings indicate that it is difficult to see and difficult to hear an approaching train, and where the road to the crossing is declivous, rendering it somewhat unsafe to leave a team, when alone, and difficult to ascertain the approach of a train unless the proper signals are given; that at such a crossing and under such circumstances the locomotive with the train approached the crossing at a high rate of speed, without giving any warning or sounding the usual signals, and run over and killed the decedent while in the act of crossing.

A railroad crossing is a place of danger, and one crossing it must use his sense of sight and hearing if he would avoid injury. In view of this recognized fact, there is a multitudè of decisions which hold that it is the duty of a traveler, whether on foot or with a team, when approaching a railroad crossing, to look and listen before attempting to cross the track, and that if he neglects to do so, and is injured, he is contributorily negligent and cannot recover.

It was the duty of the decedent before attempting to cross the track of the defendant to use his faculties, and to look and listen if any train was approaching, and more especially at a crossing known to him to be dangerous from its obstructed view and the conformation of its surroundings, rendering it difficult to hear, particularly with a team, and if he failed or neglected to perform this duty which the law devolved upon him, his injury or death was caused by his own negligence and he cannot recover. But whether the decedent stopped and looked and listened before he attempted to make the railroad crossing, or what he did on that occasion, the evidence for the plaintiff does not disclose, nor is it incumbent on him to show that he did stop, look and listen, before attempting to cross, to enable him to recover. Where there is no direct evidence that a traveler did not stop, look and listen, the presumption of law is that he performed his full duty, or that he was not contributorily negligent. "The common law presumption is," said Clark, J., "that every one does his duty until the contrary is proved, and in the absence of all evidence upon the subject, the presumption is that the decedent observed the precautions which the law prescribed."

In the case at bar, no witness was called who saw the occurrence. There is no evidence whatever whether the decedent in fact did stop and look and listen. The presumption is that he did; proof of that fact was no part of the plaintiff's case. The presumption is of fact, merely, and may be rebutted, but we are without evidence on the subject;

all that we have is that as he came upon the railroad he was struck down by the locomotive. *Schum* v. *Railroad Co.*, 107 Penn. St. 12.

To the argument, then, so ably presented, that, as there was evidence for the plaintiff tending to show that an approaching train might be heard, if the wagon was making no noise and standing still, so that the decedent, if he had stopped his team and listened, he could have heard the approaching train in time to have avoided the injury and escaped his death, the answer is that the law presumes that he did stop and listen and observe the precautions which it prescribes.

While it is the duty of a traveler on the road, when about crossing a railroad track, to observe the proper care and diligence by looking and listening, or both, as the necessity of the situation may require, for his safety, yet where the evidence is silent as to what the party injured in fact did on the occasion, it is not to be presumed that he recklessly exposed his own life, or attempted to cross the track in the face of an approaching train. Besides this, the testimony shows, according to one witness, that "it was not very easy to hear the train unless it whistles when it is down in the cut and you are on top of the road." "That it may be heard if the wagon is making no noise, but cannot be heard so well as when it whistles;" and another thinks the ability to hear in such case "depends on how the wind blows"—all tending to show, in view of the difficulty both of seeing and hearing, and the declivous nature of the highway to the railroad crossing, that a traveler might be liable to get in a position of peril from which he could not extricate himself before he could see or hear the train unless warned by the usual signals. What relative position he and his team occupied to the train, or the circumstances under which he acted, we cannot know, and at best can only conjecture upon the facts presented by this motion on record.

Advancing toward the crossing down a declivity on a highway upon which he could only see the top of the

smoke-stack of the locomotive from ten to twenty yards from the crossing, and moreover, upon a highway where it was difficult to hear when the train was in the cut unless a warning signal was given, listening, as was his duty, we may suppose, and hearing no train himself nor any warning signal of its approach, he may have continued to advance upon the assumption that no train was near or approaching, and have entered upon the crossing before he saw the train, or reached a point in his passage where he could neither advance nor recede without danger.

In cases of this character, the facts are not explainable only on the theory of negligence as held even in those jurisdictions where contributory negligence will be presumed when there are no obstructions to the sight or hearing. *Tolman* v. *Railroad Co.*, 98 N. Y. 198.[1]

While it is the duty of travelers when about to cross a railroad track to exercise proper care and caution by using their senses of sight and hearing, it is likewise the duty of those to whom is committed the control and supervision of the movements of the train to exercise such care and caution at such crossing, and to give the warning signals before reaching it, so as to prevent injury to those traveling upon the highway.

"Where the surrounding circumstances," says one text writer, "render the crossing specially dangerous to travelers on the highway, as where the line is curved, or there are obstructions to the view, it is the duty of the railway to take precautions commensurate with the danger." And again: "It is a duty incumbent on the railway to cause its trains to approach and pass the crossing with care and such a rate of speed of the train as, under the conditions of the crossing, is prudent with regard to travelers on the highway. Ry. Ac. Law, §§ 170, 171.

In view of the mutual right of the parties to use this crossing, and the duty of care and caution that devolved on each under the circumstances, we are of the opinion, upon the evidence submitted for the plaintiff, taken, as it

(1) 58 Am. Rep. 649.

must be, as true, that there was no error in overruling the motion for non-suit.

The next error specified is that the court erred in overruling the defendant's motion for a new trial. The motion was based on the ground that the evidence was insufficient to sustain the verdict. As the record discloses that no exceptions were taken, we must assume that no error of law occurred during the trial, or in the charge of the court, or that the court refused to give any direction asked, which the defendant desired to have certified to us. The case, then, at this stage rests solely on the error assigned in overruling the motion for a new trial.

It has been frequently held by this court that the granting or the refusal of such a motion rests wholly in the discretion of the trial court, and cannot be reviewed on appeal. *State of Oregon* v. *Fitzhugh*, 2 Or. 236; *Halleck* v. *City of Portland*, 8 Or. 29; *Kearney* v. *Snodgrass*, 12 Or. 311; *State* v. *Mackey*, 12 Or. 156; *State* v. *Clements*, 15 Or. 243, in which Thayer, C. J., said: "The court has nothing to do with the rulings of the lower court upon the motion for a new trial, or to set aside the verdict of a jury. It deals only with questions of law, and they must be squarely presented as such."

It results that we cannot do otherwise than affirm the judgment.