Argued September 28, affirmed October 6, 1914.

# WILLETTS v. SCUDDER.*

(144 Pac. 87.)

**Appeal and Error—Review—Scope and Extent.**

1.  Since an order denying a new trial is not appealable, it cannot be reviewed on appeal from the judgment.

[As to writs of error, their scope and effect, see note in 91 Am. Dec. 193.]

**Libel and Slander—"Libel."**

2.  A libel is a malicious defamation, made public either by printing, painting, writing, signs or pictures, tending to blacken the memory of one who is dead, or the reputation of one who is living, and to expose him to public hatred, contempt and ridicule.

**Forgery—Definition.**

3.  Forgery is the false making or material altering, with intent to defraud, of any writing, which, if genuine, might be of legal efficacy, or the foundation of legal liability.

**Libel and Slander—Words Imputing Crime—Forgery.**

4.  To charge a person in writing with forgery is actionable *per se*.

**Libel and Slander—Justification—Truth.**

5.  Under the express provisions of Section 92, L. O. L., a person charged in a civil action with libel may defend by alleging that the alleged libelous words were true. ·

[As to justification in actions for libel, see note in 91 Am. St. Rep. 285.]

**Evidence—Weight and Conclusiveness—Questions of Fact.**

6.  Article VII, Section 3, of the Constitution, providing that in actions at law no fact tried by a jury shall be otherwise re-examined, unless the court can affirmatively say there is no evidence to support the verdict, the evidence to support the verdict is legal evidence, tending to prove every material fact as to which the prevailing party has the burden of proof.

**Trial—Taking Questions from Jury—Sufficiency of Evidence.**

7.  If there is any evidence to support the verdict, the motion for an instructed verdict is properly overruled.

---

*Upon the question whether false assumption of authority in signing another's name as agent for him constitutes forgery, see note in 32 L. R. A. 831.

The authorities on the question of truth as a defense to a civil action for libel or slander are collated in notes in 21 L. R. A. 502; 31 L. R. A. (N. S.) 132, and 50 L. R. A. (N. S.) 1040.    REPORTER.

**Forgery—Elements—Intent to Defraud.**

8. Where a person received a check in settlement of a claim of a company and indorsed the company's name on the check and deposited it to his own credit, he is not guilty of forgery, if he believed that he had authority, as the agent of the company, to sign his name, though he had no such authority in fact; the intent to defraud being an essential element of forgery.

[As to what is forgery, see notes in 22 Am. Dec. 306; 119 Am. St. Rep. 317.]

**Libel and Slander—Actions—Questions for Jury.**

9. In an action for libel, where defendant pleads the truth of its charge that plaintiff forged the indorsement of a check, it is a question for the jury whether plaintiff made the indorsement with intent to defraud.

[As to province of court and of jury in actions for libel, see note in 13 Am. St. Rep. 625.]

From Multnomah: GEORGE N. DAVIS, Judge.

This is an action for libel by P. L. Willetts against W. T. Scudder. From a judgment in favor of plaintiff, defendant appeals. The facts are stated in the opinion of the court.   AFFIRMED.

For appellant there was a brief over the name of *Messrs. Ridgway & Johnson,* with an oral argument by *Mr. Albert B. Ridgway.*

For respondent there was a brief over the names of *Mr. B. W. Graham* and *Mr. William E. Beckett,* with an oral argument by *Mr. Graham.*

Department 1.   MR. JUSTICE RAMSEY delivered the opinion of the court.

This is an action brought by the plaintiff to recover damages from the defendant for alleged libels published concerning him, by the defendant.

The complaint contains two counts, charging the defendant with the publication of libels, and the libels charged are contained in two letters written by the de-

fendant and addressed to L. 'S. Miller, president of the Adirondack Maple Company, of Lowville, New York.

The defendant is the president of the Scudder Syrup Company of Chicago. During a part of 1911, and parts of January and February, 1912, the plaintiff was in the employ of the Scudder Syrup Company, as a traveling salesman in Oregon and the Pacific Northwest. About the 10th of March, 1912, without consulting the Scudder Syrup Company, he ceased working for that company and entered the employment of the Adirondack Maple Company, as a traveling salesman for the latter company. These companies were, to some extent competitors in the sale of syrup. In November, 1911, the Scudder Syrup Company had an account against Allen & Lewis, of Portland, that was in part disputed. The plaintiff was not working for said company at that time, but he was residing in Portland. The defendant, for said company, wrote the plaintiff and asked him to call on Allen & Lewis and adjust said claim for it. The plaintiff called on Allen & Lewis, as directed, and made a settlement with them, and it was found that Allen & Lewis, at that time, owed said company $89.12, for which they gave to the plaintiff, in settlement of that balance, a check for said amount. It is dated November 20, 1911, and is payable to the order of the Scudder Syrup Company. On said 20th day of November, the plaintiff wrote to the Scudder Syrup Company, at Chicago, reporting that he had adjusted said matter with Allen & Lewis, and that he had received from them a check for $89.12, in settlement of said account, and asking the Scudder Syrup Company to permit him to use said check or the money covered by it as an advance on his salary for January and February, 1912. It had been agreed between him

and that company that he should resume working for that company as a traveling salesman in January, 1912. About two days after writing said letter, and before he received an answer to his request, the plaintiff indorsed said check in blank by writing on the back thereof the following words: "Scudder Syrup Company, A. L. Willetts"—and deposited it to his credit at the banking-house of Ladd & Tilton, where he was accustomed to do his banking business. On November 28, 1911, the Scudder Syrup Company wrote the plaintiff from Chicago, acknowledging that it had received his letter of November 20th, saying, *inter alia,* the following:

"You will also note we have credited them (Allen & Lewis) with the check given you in the amount of $89.12, which amount has been charged to your account with us."

On December 1st, four days later, the defendant also wrote the plaintiff a letter acknowledging the receipt of the plaintiff's said letter of November 20th, and saying:

"I note that Allen & Lewis gave you $89.12, and this amount you want temporarily, which is satisfactory."

The two letters referred to, *supra,* from said company and the defendant show that the plaintiff on November 20th, the day that the check from Allen & Lewis was given to him, wrote to the Scudder Syrup Company, giving it an account of the adjustment of said business with Allen & Lewis, and of the fact that the last-named company had given him a check for $89.12, to pay the amount due from said company to the Scudder Syrup Company, and asking the last-named company to permit him to use the money covered by said check as an advance on salary or as a

loan, and that both the Scudder Syrup Company and the defendant agreed that it was satisfactory for him to have said money as an advance or as a loan. Those letters show also that he informed said company that Allen & Lewis had paid said account by check. The company's letter states that Allen & Lewis had been credited with the amount of the check, and that the plaintiff had been charged therewith in his account.

The libels that are the basis of this action grew out of the indorsement of said check by the plaintiff. The plaintiff was in the employ of the Scudder Syrup Company during a part of January and February, 1912; but on March 10, 1912, he entered the service of the Adirondack Maple Company of Lowville, New York. On April 12, 1912, the defendant wrote to L. S. Miller, president of the Adirondack Maple Company, a letter informing him that the Scudder Syrup Company had had the plaintiff in its employ during the previous year, and had paid him $100 per month and traveling expenses. He stated also that the plaintiff was indebted to his company, and made the following charge against him:

"Allen & Lewis gave him a check, payable to our order, and, to get the money on this check, he forged our name."

On April 26, 1912, the defendant wrote said L. S. Miller another letter, again accusing the plaintiff of the crime of forgery, as follows:

"We have written Mr. Willetts that, unless he reimburses us for the check on which he forged our signature, we will begin a criminal action against him at once."

The complaint contains two counts for libel, based on the charges made by the defendant in the two letters,

addressed to L. S. Miller, as stated, *supra*. Miller was the president of the company, for which the plaintiff was then working. The charges in those letters caused said company to discharge the plaintiff, and he was, in consequence thereof, without employment for three months.

The defendant filed an answer, denying parts of the complaint, and then set up, as a defense to each count of the complaint, that the charges that he made against the plaintiff and set out in the complaint were true, etc. The answer pleaded also a settlement with the plaintiff, but, as there appears to be no merit in said last-named defense, it will not be referred to again.

The most of the new matter of the answer was put in issue by the reply. At the trial a verdict and a judgment were rendered for the plaintiff in the sum of $433.75. When all of the evidence was in, the defendant moved the court to instruct the jury to return a verdict for the defendant. This motion was denied. After the judgment was rendered, the defendant presented a motion to set aside the verdict and judgment and for a new trial. This motion also was denied. The defendant appeals and assigns as errors the denial of said motions. It is not claimed that the trial court erred in admitting or excluding evidence or in the instructions given to the jury.

1. The order denying the motion for a new trial is not an appealable order, and hence we cannot review the action of the court in relation thereto. This rule is well settled by the decisions of the court. It is not necessary to cite the cases announcing this rule of practice.

At the conclusion of the evidence, the defendant moved the trial court for an order thereof, directing

the jury to return a verdict in favor of the defendant, for the reason that the defendant had justified the charges made against him, and for the further reason that the plaintiff had failed to make out his case.

2. A libel is a malicious defamation, made public either by printing, painting, writing, signs or pictures, tending to blacken the memory of one who is dead, or the reputation of one who is living, and to expose him to public hatred, contempt or ridicule: *Root* v. *King,* 7 Cow. (N. Y.) 613; Newell, Defamation, Slander and Libel, § 3.

3. Forgery is the false making or material altering, with intent to defraud, of any writing, which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability: Black's Law Dict. (2 ed.), 513; *State* v. *Wheeler,* 20 Or. 195 (25 Pac. 394, 23 Am. St. Rep. 119, 10 L. R. A. 779).

4, 5. To charge a person in writing with forgery is actionable *per se:* 25 Cyc. 282. A person charged in a civil action with libel may defend by alleging and proving that the alleged libelous words used by him were true: Section 92, L. O. L.; *Upton* v. *Hume,* 24 Or. 431 (33 Pac. 810, 41 Am. St. Rep. 863, 21 L. R. A. 493).

The defendant in his answer alleges that the plaintiff did forge the name or signature of the Scudder Syrup Company in indorsing the check referred to, *supra,* given by Allen & Lewis, and that what he said in relation thereto was true, etc. The verdict of the jury is in effect a finding that the charge of forgery made by the defendant against the plaintiff is false and malicious.

The defendant asks us on this appeal to set aside said verdict and to hold that his motion for an in-

structed verdict for the defendant should have been sustained by the trial court.

6. Article VII, Section 3 of the Constitution, adopted in 1910, in part is as follows:

"In actions at law, where the value in controversy shall exceed $20, the right of a trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict."

This constitutional provision is a standing inhibition, binding upon every court, against re-examining any fact that has been tried by a jury, unless the court can say affirmatively and conscientiously that there is no evidence to support the verdict. As held in many decisions of this court, the evidence necessary to support a verdict is legal evidence, and it must tend to prove every material fact as to which the party, in whose favor it was rendered, had the burden of proof. When, however, there is no evidence to support a verdict, it is the duty of the court, when properly asked to do so, to set it aside.

7. The question for determination on this appeal is as to the sufficiency of the evidence to support the verdict. If there is any evidence to support the verdict, the motion for an instructed verdict in favor of the defendant was properly overruled.

8. The defendant accused the plaintiff of the crime of forgery, and the words used in making said charge are actionable *per se* and imply malice. The defendant admits writing the letter and making the charges, and asserts that what he charged is true, and that he acted in good faith in making the charges. The facts, briefly stated, are: The Scudder Syrup Company had

a claim against Allen & Lewis that was partly disputed. The plaintiff was not at that time (November, 1911) in the employ of the company, but he was residing in Portland. The defendant, as president of the Scudder Company, wrote the plaintiff, asking him to call upon Allen & Lewis and adjust that matter for them. The plaintiff, as requested, called on Allen & Lewis and made a settlement of the disputed account, and it was ascertained that Allen & Lewis owed the Scudder Syrup Company a balance of $89.12. In payment thereof, Allen & Lewis delivered to the plaintiff a check for that amount, payable to the order of the Scudder Syrup Company. It had been agreed between the company and the plaintiff that the latter should begin work again for the company in January, 1912. The plaintiff was then out of employment, and was waiting for the time to come when he was to begin work for the company. He had worked for it in the past.

The check was drawn on a Portland bank. Instead of forwarding the check to the Scudder Syrup Company, the plaintiff, on the day that he received it, wrote the company that he had adjusted the claim against Allen & Lewis, and that the latter company had given him a check for $89.12 in payment of the balance due. In his letter he asked the Scudder Syrup Company to permit him to use this money as an advance on his salary for January and February. The company received his letter, and on November 28, 1911, eight days after the check was drawn, it, by its bookkeeper, wrote the plaintiff, acknowledging the receipt of his letter of November 20th, and saying that the company had credited Allen & Lewis with the check for $89.12, that they had given him, and that the company had charged the amount of said check to the plaintiff's personal account. On December 1st the defendant also wrote the

plaintiff, acknowledging receipt of the plaintiff's letter of November 20th, and saying *inter alia:*

"I note that Allen & Lewis gave you $89.12, and this amount you want to use temporarily, which is satisfactory," etc.

Thus it appears that the plaintiff, on the day that he received the check, wrote the company that he had received it, stating the amount, and for what it was given, and asking the company to let him use it as an advancement on salary or as a loan, and that the company and the defendant wrote the plaintiff that that was satisfactory, and charged his personal account with the amount thereof. The facts show that the company advanced or loaned the amount of the check to him at his request, knowing that he had received it in payment to the company of the Allen & Lewis account. The plaintiff concealed nothing from the company in relation to the check. The defendant, notwithstanding these facts, claims that the plaintiff was guilty of forgery in indorsing the name of the company on the back of the check and his own name closely under the company's name, without the word "per" or "by" before his name and without stating that he acted as the company's agent. The defendant testified that no one had authority to indorse checks for the company, except its officers. It appears from the evidence that the plaintiff indorsed the check before he received letters from the company or the defendant telling him that it was satisfactory for him to have the money as he had requested. The check, after its indorsement, was placed to the plaintiff's credit at Ladd & Tilton's bank, where he did his banking business. He wrote the company's name on the back of the check in his ordinary handwriting, without any disguise, and wrote his own name

below it in the same handwriting. In his evidence he says that he indorsed the check as agent of the company, and he appears to have thought that, by writing the company's name and his name immediately below it on the back of the check, he indorsed the check as agent of the company.

When the plaintiff was testifying, after he had told of the indorsing of the check and depositing it in the bank, and asking the company for leave to use the money, a juror asked him whether he always did it that way, and he answered: "I have done that in at least one other instance, and it was satisfactory." This statement was not denied by any evidence. That statement seems to mean that he had in at least one other instance indorsed and applied a check of the company in the same way that he did in this instance, and that his acts in doing so were satisfactory. This is a circumstance tending, to some extent, to show that the company had previously permitted him to indorse a check.

One of the material facts necessary to constitute the crime of forgery is an intent to defraud. If the plaintiff, when he indorsed the check, acted in good faith and believed that he had a right, as agent of the company, to indorse it, and did not intend to defraud anyone, he did not commit the crime of forgery. The signing of another's name to a note or a check without authority is not necessarily forgery. It constitutes that offense only when it is done with intent to defraud.

9. The question whether the plaintiff indorsed the check with intent to defraud was a question of fact to be determined by the jury from the circumstances relating to the act, as shown by the evidence. It was the province of the jury, and not the court, to determine

72 Or.—35

whether the plaintiff indorsed the check in question with intent to defraud.

In *People* v. *Wiman,* 148 N. Y. 33 (42 N. E. 409), the court says:

"Criminal intent is essential to constitute the crime (forgery), and the testimony bearing thereon is always a question for the jury."

In *State* v. *Bjornaas,* 88 Minn. 305, 306 (92 N. W. 982), the court says:

"It is elementary that the *animo furandi,* or intent to defraud, is an essential element of the crime of forgery, or of uttering a forged instrument, which is to be proved or inferred from facts reasonably tending to establish a guilty purpose, and may be negatived by evidence showing the absence of such an intent. * * As stated in a case very similar on the facts to the one at bar: Where the intent to damage or defraud is a salient and essential part of the case, such intent is not an irrebuttable presumption of law, but is an open question for the jury, to be determined by the facts and circumstances in proof, for the signing of another's name without authority is not necessarily forgery."

In *Agee* v. *State,* 113 Ala. 57 (21 South. 208), the court says, referring to a charge given to the jury:

"This charge withdrew from the jury all consideration of one of the ingredients of the offense alleged (forgery), the intent to defraud, which was a matter of inference from the facts before them, to be drawn or rejected by them, as those facts might seem to them to require."

In *Gooden* v. *State,* 55 Ala. 180, the court says:

"The charge given by the court cannot be supported. It withdraws from the jury all consideration of the intent to defraud—a matter of inference from the facts before them, which it was their province to draw or reject."

In *Kotter* v. *People,* 150 Ill. 441 (37 N. E. 932), the syllabus in part is:

"On the trial of one for the forgery of receipts, the court on behalf of the people, instructed the jury that, while it was necessary that the defendant should have forged the receipts with the intent to damage and defraud the persons whose names were signed thereto, yet if they found that the defendant forged the receipts or either of them, then the law would presume that defendant intended to damage and defraud such persons.  *Held,* that it was error to give the instruction."

In *McCay* v. *State,* 32 Tex. Cr. 233 (22 S. W. 975), the court says in part:

"It is not every signing of another's name without authority which constitutes forgery.  There must inhere in the act an intent to injure or defraud.  If there is a reasonable and honest belief that the signature will be approved, there can be no forgery."

In *State* v. *Gullette,* 121 Mo. 457 (26 S. W. 356), the court says:

"Instructions 1 and 2 given on behalf of the state were erroneous in not submitting to the jury the issue raised by the allegations of the indictment and defendant's plea of not guilty, whether the act charged, if done, was done with the 'intent to injure or defraud.' "

In *Knowles* v. *State* (Tex. Cr. App.), 74 S. W. 767, the court says:

"Now, if Haney authorized appellant to sign the name, or if appellant believed he had a right to sign the name under all the existing circumstances, he would not be guilty. * * Upon another trial this matter should be submitted in the charge to the jury."

In *Regina* v. *Beard,* 34 Eng. Com. L. R. 659, Mr. Justice COLERIDGE, says:

"It is not merely writing another man's name, but writing it without authority and with intent to defraud. But I go further, because I think that if a person had reasonable ground for believing, from the acts of the party, that he had authority to accept, and did in point of fact act upon that, it could not be forgery."

Writing the company's name on the back of the check without authority so to do was not necessarily forgery. Such an act, to constitute forgery, must be done with the intention to defraud. Assuming that the plaintiff had no authority to indorse checks belonging to the Scudder Syrup Company, still his indorsement of the check in question did not constitute the crime of forgery unless he did it with intent to defraud.

The contention of the defendant is that the trial court should have determined, from the evidence, that the plaintiff, by writing the Scudder Syrup Company's name upon the check in question, committed the crime of forgery, and have directed the jury to return a verdict for the defendant; but we cannot assent to this claim.

The Constitution guarantees to parties, in cases of this kind, a trial by jury, and we hold that there was in evidence facts sufficient to require the case to be submitted to the jury. We cannot say that there was no evidence to support the verdict.

We find no error in the record. The judgment of the court below is affirmed.        AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BURNETT and MR. JUSTICE MOORE concur.