Argued February 25; affirmed May 10, 1932

BENSON *v.* BIRCH

(10 P. (2d) 1050)

W. O. Sims, of Portland (Sims & Sims, of Portland, and A. W. Norblad, of Astoria, on the brief), for appellant.

Frank C. Hesse, of Astoria (Hesse & Franciscovich, of Astoria, on the brief), for respondent.

RAND, J. This is an appeal from a judgment in favor of plaintiff in a personal injury action. The case was tried before a jury and the judgment entered was in conformity to the verdict. The injury complained of was caused by an automobile driven by defendant which ran over the plaintiff on a public bridge near Astoria, and consisted of a skull fracture and concussion of the brain, rendering plaintiff unconscious for five days and semi-conscious for two additional days. The plaintiff sustained the injury complained of on August 12, 1930, and at the time was nearly eight years of age. The action was brought by the injured infant who appeared by his father as guardian ad litem pursuant to section 1-304, Oregon Code 1930, which provides that: "When an infant is a party, he shall appear by guardian, who may be appointed by the court in which the action is brought, or by a judge thereof, or a county judge."

It is contended that the court erred in refusing to dismiss the action upon the ground that the guardian

ad litem had given no bond, and upon the further ground that, since the complaint failed to allege that the infant had no general guardian, it failed in not disclosing a necessity for the appointment of a guardian ad litem, and, therefore, the action must fail.

 The statute providing for the appointment of a guardian ad litem does not require the giving of any bond. A guardian ad litem is a special guardian appointed by the court to prosecute or defend in behalf of an infant a suit to which such infant is a party. His office is to represent the interests of the infant in the litigation. Although an infant is capable of suing or being sued, his incapacity requires that he be protected and to that end the statute requires that the infant litigant should be properly represented by some one who may adequately enforce or protect his rights. 31 C. J., pp. 1118, 1119. A guardian ad litem, like a *prochein ami,* or next friend, is one to prosecute and look after the suit and, as said in *Fletcher v. Parker,* 53 W. Va. 422 (44 S. E. 422, 97 Am. St. Rep. 991); "His duties and powers end with judgment recovered. He cannot receive pay of it; but payment must be made to the regular guardian or to the court." Also see note, 97 Am. St. Rep. 995, et seq. Since the whole office, powers and duties of a guardian ad litem end with the termination of the litigation, there is no necessity or reason for a guardian ad litem to give a bond and, under the uniform practice of the courts of this state, no bond is required. The rule is different, of course, as to a general guardian who, under the law, is intrusted with the care, custody and control of the estate of his ward. Sections 11-1301 to 11-1337, Oregon Code 1930, relate to general guardians and require that the prescribed bond shall be given, but those sections have no application to a guardian ad litem. Furthermore, if the failure of the

guardian ad litem to give a bond in the instant case was a defect as contended for, it was waived by defendant's failure to raise the question by demurrer or answer and the objection was made too late. *Peters v. Johnson*, 124 Or. 237 (264 P. 459).

Defendant relies principally upon his second assignment of error which is stated in the bill of exceptions in the following words:

"During the course of the argument of Mr. Hesse the following proceedings were had, to wit:

"Mr. Norblad: Now, Your Honor, Mr. Hesse in his argument to the jury made the following statement, speaking about Mr. Arnold whose name has appeared more or less in the case during the trial; referring to Mr. Arnold, he said 'I don't know who Mr. Arnold is but you can draw your own conclusions because he came down there with Mr. Knutson—

"Mr. Hesse: Your Honor, I did not make any such statement as 'draw your own conclusions.'

"Mr. Norblad: Isn't that your recollection, Your Honor?

"Court: I don't recall just if that statement was made, although it was similar.

"Mr. Norblad: Strike that, then. 'He came down there to the place of the accident with Mr. Knutson and you know what Mr. Knutson's business is and you can draw your own conclusions—'.

"Mr. Hesse: I didn't say that.

"Court: The court does not recall of that statement.

"Mr. Norblad: All right. Strike that, then. 'We all know that Mr. Knutson is one of the prominent insurance men of this town and handles accident insurance. As a matter of fact, he handled the insurance in this case as agent for the insurance company that is covering the defendant. I move in view of that statement of Mr. Hesse's that the jury be dismissed and the case declared a mistrial and on the further ground that the statement was not made in good faith.

"Mr. Hesse: I would like to make the statement I said.

"Mr. Norblad: Does the court recall that statement was made?

"Court: A statement very similar to that. I wouldn't say that is the exact words nor would I want to make a correction of the statement.

"Mr. Hesse: Here is the situation, Your Honor, I think when the Curtis boy was on the witness stand, the defense brought out the fact which was established on the direct examination that the day after the accident, the Curtis boy, accompanied by Mr. Arnold from Portland and Mr. Knutson from Astoria went to the scene of the accident and went over the—made a view of the premises and questioned the boy with reference to how the accident happened. In view of that fact, we would have the right to question the witness then if we had wanted to, whom Mr. Arnold represented and whom Mr. Knutson represented, but we deliberately refrained from asking that because we didn't want to bring out prejudicial matter. In the argument to the jury, I merely stated to the jury that, commenting on the way the case was handled, and told them the boy, Curtis boy, testified that he was there after the accident with Mr. Arnold whose business I do not know and in company with Mr. Knutson, and that I don't know what—but you gentlemen probably know what business he is engaged in, and went over there to the scene of the accident. There is nothing exceptional to it. There is absolutely no proof that any of the jury even know he was engaged in the insurance business. We had a right to go into that insurance question when they developed that fact by the Curtis boy and there are two cases on that proposition here. (Here followed argument at length by counsel.) * * *

"Court: I will tell you what I am going to do in regard to this matter. I am not going to order a mistrial. It may be that the statement made would justify a mistrial. If so, that matter can be determined on a motion for a new trial.

"Mr. Sims: I want the record to show that there could not have been any good motive on the part of counsel for plaintiff in referring to Mr. Arnold. He has not been a witness in this case and has not been called for the purpose of impeaching anything that anybody has said. He has not attempted to influence the testimony on either side and therefor the testimony with regard to Mr. Arnold could have only had an evil motive. By statements and by inuendo, they have constantly been making references to Mr. Arnold and it was just done to make the jury wonder about this man Arnold.

"Mr. Norblad: He is not in fact an adjustor for this insurance company. He looks up the claims and conducts an investigation into the evidence, and we want the record to show that.

"Mr. Franciscovich: Will you testify to that.

"Court: Put that admission in for the purpose of the record in this matter if you wish.

\*　　　\*　　　\*　　　\*　　　\*

"Mr. Norblad: I would like to have an exception to the court's ruling on our motion.

"Mr. Sims: And also ask the court to instruct the jury to absolutely disregard the argument of Mr. Hesse in regard to matters that do not appear on record.

"Mr. Norblad: We withdraw that.

"Court: Whichever shall I believe.

"Mr. Norblad: We withdraw that."

■ It is impossible to determine from the above what particular statement Mr. Hesse made in his argument to the jury, or whether any improper statement was made of the fact that the defendant was insured. It is clear from the interpretation he placed upon the remarks which he claims to have made that his argument was not improper and, if we take the only statement made by Mr. Norblad which he did not voluntarily ask to have stricken, the making of such statement was denied by Mr. Hesse and was not recalled by the court.

In that connection, it will also be noted that the alleged statement is commenced with quotation marks but there are no quotation marks showing where the statement alleged to have been made ended. In this situation we cannot hold as a matter of law that the argument was improper. It will also be observed that the only ruling of the court thereon was where the court said:

"I am not going to order a mistrial. It may be that the statement made would justify a mistrial. If so, that matter can be determined on a motion for a new trial."

Also, it will be noted that, while one of the defendant's attorneys moved that the jury be instructed to disregard what Mr. Hesse was claimed to have said, the other attorney withdrew the motion.

It was the intention of the statute that the bill of exceptions, when settled and certified to by the trial judge, shall be definite and certain and that none of the matters so certified to shall be the subject of conjecture or doubt. In other words, the bill of exceptions is to be deemed conclusive upon all statements contained in it and, if there is a disagreement between the counsel and the court as to any ruling made by the court upon any question of law, section 2-702, Oregon Code 1930, provides the manner by which the truth of the matter may be presented to this court and by it be determined. Under that section, if there is a disagreement between the counsel and the court, the counsel may verify his statement thereof by his own oath and that of two respectable and disinterested persons, or by his own oath and that of the stenographer who took the same down, and file the same as an exception to the ruling objected to. Had this procedure been followed in the instant case, the uncertainty presented by this bill of exceptions could have been determined but, the statute not

having been complied with, there is nothing before us to review in respect to this matter. *State v. McAvoy,* 57 Or. 1 (109 P. 763); *Fitzhugh v. Nirschl,* 77 Or. 514, (151 P. 735); *Thomsen v. Giebisch,* 95 Or. 118 (173 P. 888); *State v. London,* 97 Or. 423 (192 P. 489); *Gary Coast Agency, Inc., v. Lawrey,* 101 Or. 623 (201 P. 214).

■ Defendant assigns error in the overruling of a motion for a new trial. If there was error in the ruling complained of, it could not be considered upon this appeal for the reason that neither the motion nor the affidavits filed in support thereof are included in the record before us and we are, therefore, at a loss to know what the grounds for the motion were or the reasons for the overruling of the motion. Section 7-501, Oregon Code 1930, grants the right to an appeal from an order setting aside a judgment and granting a new trial, but it does not confer the right to appeal from an order denying a motion for a new trial. Section 2-701, as held in *Kearney v. Snodgrass,* 12 Or. 311 (7 P. 309), defines an exception as one which must be taken before verdict. If the motion in question was based upon the alleged improper argument of counsel and the ruling on defendant's motion for a mistrial because thereof, the matter is fully presented by the bill of exceptions and has already been considered, while if it related to alleged misconduct on the part of the jury, which was not discovered until after the verdict was returned, or newly discovered evidence, the record is silent; hence, there is nothing for us to consider in respect to said assignment.

■■ It has been repeatedly held by this court that the assignment of error based upon the overruling of a motion for a new trial is a nullity and that no exception can be taken to an order overruling such motion nor can such order be considered on appeal. Holding to that effect, see *Kearney v. Snodgrass,* supra; *State v.*

*Mackey*, 12 Or. 154 (6 P. 648) ; *State v. Clements*, 15 Or. 237 (14 P. 410) ; *Fisk v. Henarie*, 15 Or. 89 (13 P. 760) ; *McBride v. Northern Pac. R. R. Co.*, 19 Or. 64 (23 P. 814) ; *State v. Foot You*, 24 Or. 61 (32 P. 1031) ; *Beekman v. Hamlin*, 23 Or. 313 (31 P. 707) ; *Elder v. Rourke*, 27 Or. 363 (41 P. 6) ; *State v. Gardner*, 33 Or. 149 (54 P. 809) ; *McCormick Machine Co. v. Hovey*, 36 Or. 259 (59 P. 189) ; *Houser v. West*, 39 Or. 392 (65 P. 82) ; *Crossen v. Oliver*, 41 Or. 505 (69 P. 308) ; *First National Bank v. McCullough*, 50 Or. 508 (93 P. 366, 17 L. R. A. (N. S.) 1105, 126 Am. St. Rep. 758) ; *Manning v. Portland Ship Bldg. Co.*, 52 Or. 101 (96 P. 545) ; *Stark v. Epler*, 59 Or. 262 (117 P. 276) ; *Fassett v. Boswell*, 59 Or. 288 (117 P. 302) ; *Maccartney v. Shipherd*, 60 Or. 133 (117 P. 814, Ann. Cas. 1913D, 1257) ; *Abercrombie v. Heckard*, 68 Or. 103 (136 P. 875) ; *White v. Geinger*, 70 Or. 81 (139 P. 572) ; *Willetts v. Scudder*, 72 Or. 535 (144 P. 87) ; *Beaver v. Mason, Ehrman & Co.*, 73 Or. 36 (143 P. 1000) ; *Purdy v. Winters' Est.*, 85 Or. 188 (159 P. 1091, 166 P. 536) ; *Clackamas Adjustment Co. v. Hight*, 125 Or. 343 (267 P. 523).

Notwithstanding such holdings and the general terms in which the rule has been stated, there has always been a well recognized exception to the rule. Where a motion for a new trial is based upon the misconduct of the jury which did not come to the knowledge of the party making the motion for a new trial until after the verdict had been returned, or where there has been newly discovered evidence which was not known at the time of the trial and the matter has been presented to the trial court by a motion for a new trial, in proper cases where the overruling of the motion was an abuse of discretion, this court has always reserved the right to consider and pass upon such ruling upon appeal. Mr. Justice HARRIS in *State v. Evans*, 98 Or. 214 (192 P. 1062, 193 P. 927), refers

to the general rule and the exception and cites numerous cases where this court has held that in particular cases where the overruling of a motion for a new trial was an abuse of judicial discretion, the trial court's ruling thereon will be reviewed on appeal. To the same effect see *Mount v. Welsh,* 118 Or. 568 (247 P. 815); *Martin v. Oregon Stages, Inc.,* 129 Or. 435 (277 P. 291); *Egli v. Hutton,* 135 Or. 175 (294 P. 347), and *Goldfoot v. Lofgren,* 135 Or. 533 (296 P. 843); *Brown v. Jones,* 137 Or. 520 (3 P. (2d) 768).

Another assignment of error is that the court erred in permitting the guardian ad litem to testify that the progress made by his infant son in school since the accident had not been as good as it was before the accident. This was objected to on the ground that it called for an opinion of the witness and that he was not shown to be qualified to express such an opinion. The answer was that the progress made by the son in his school work was not as good after the accident as before. This answer was not the expression of an opinion but a statement of fact and the question did not call for an opinion but for the expression of an existing fact. The objection, therefore, we think was properly overruled, but regardless of whether it was or not the same evidence was given by two of the teachers of the injured boy. One, under whom he attended school before the accident, testified that he made average progress in his studies, and the other teacher, who had him in charge after the accident, testified that he was nervous, that he was not making good progress, and was at the foot of his class. Hence, in any event, the admission in evidence of the answer was not prejudicial to the rights of the defendant.

Finding no error in the record, the judgment must be affirmed.

BEAN, C. J., ROSSMAN and CAMPBELL, JJ., concur.