JAMES WILLIAMS, petitioner-appellant,

*v.*

AMANDA WILLIAMS, defendant-respondent.

[Submitted March term, 1921.   Decided June term, 1921.]

Witnesses should not be permitted to reiterate their testimony under the guise of rebuttal; consequently, in a divorce case, the petitioner's failure to recall in rebuttal his witness who testified in chief, in order that she might, by repeating her testimony, rebut defendant's contradiction of it, is not a corroboration of such contradiction.

---

On appeal from the court of chancery.

*Mr. George A. Douglass,* for the appellant.

*Mr. Edward R. Croll,* for the respondent.

The opinion of the court was delivered by

WHITE, J.

This is a petition by the husband for divorce on the ground of the adultery of his wife. He is a hotel cook employed (since leaving Asbury Park) in a hotel in Summit, whence he came once each week to his home, in Newark, where he had his family, consisting of his wife (the defendant) and two children, aged four and five years respectively.

After coming from Asbury Park, where petitioner and his family lived nearly four years, they occupied rooms on the third floor of 78 East Kinney street, Newark, about three months, during which time the corespondent, David Aikin, with his wife, lived on a lower floor of the same house. In June, 1917, petitioner and his family moved to 194 Sherman avenue, Newark, where their flat consisted of a front room, two bedrooms and a kitchen. Petitioner was away at his employment at Summit during the week, and in a short time the corespondent, Aikin, left his wife and came, first, for his board, and afterward for his lodgings, also, to petitioner's flat where defendant says she took him as a boarder. There was evidence by at least one disinterested witness that defendant introduced Aikin as her brother, which he was not. There was also evidence by disinterested witnesses that defendant and Aikin were affectionate towards each other and acted like lovers during the absence of petitioner.

On a night in February, 1918, petitioner, according to his testimony, came home on Tuesday night about ten-thirty, instead of on Saturday, as he usually did. He knocked at the door ten minutes before his wife let him in, and then she tried to prevent his going beyond the bedroom where the two children were sleeping. He pushed into the other bedroom, however, which had one double bed in it, the condition of which indicated that two people had recently occupied it, and on into the ad-

joining front room where he found "David Aikin sitting in a chair with no socks on and his pants over his pajamas, with his head hung down; he never raised his head to say a word." Petitioner says he then called across the hall to their landlady, who came over, and petitioner said to her, in the presence of Aikin and of his wife, "it is a shame that David Aikin broke up his home and come and broke up mine." That neither Aikin nor defendant made any reply. The landlady testified that she was sitting with her daughter in her kitchen about ten-thirty at night when petitioner came across the hall and called her to their kitchen; that she found defendant in a very angry mood and greatly excited, walking in and out dressed in a kimono over her nightgown with no stockings on; that petitioner then said, in the presence of all three of them, "Here is a man that has broken up his own home and now he comes here and breaks up mine," and that Aikin "did not say a word; he sat with his pants over his pajamas and no top shirt on and in his bare feet, and he sat this way [illustrating] with his head down and his arms folded and he never said a word;" that then defendant said to petitioner, "If you don't like Mr. Aikin here, don't bother me; I don't want you here, get out; I don't want you here, you have no right here, and especially at this hour of the night." The petitioner's testimony was corroborated in other important particulars by two other disinterested witnesses. There was also much other testimony tending to indicate improper relations between the defendant and the corespondent.

Defendant denied the adultery, although her testimony admits most of the important episodes testified to by petitioner and his witnesses, and attempts to explain away their apparent significance. But in all important respects she is uncorroborated in her denial. She said, however, that it was she and not the petitioner who called in the landlady on the night when petitioner unexpectedly came home, as above described; and the learned vice-chancellor thought the fact that the landlady was not recalled in rebuttal to contradict this statement indicated that it was true, and that it therefore being the wife who called in the third party, she would hardly have done so had she been

guilty. The opinion (which was delivered orally immediately upon the closing of the case) indicates that this incident of the failure to recall the landlady was the deciding factor in the mind of the vice-chancellor. We think that in this he was led into error by overlooking the fact that the landlady had already testified in petitioner's case in chief to all that she could have said in this respect had she been recalled, viz., that it was the petitioner and not the defendant who called her in on the night in question. Under these circumstances she could not properly have been recalled in rebuttal simply to repeat what she had already said. That would have been to contradict a contradiction by a mere repetition of the original testimony, "Witnesses should not be permitted to reiterate their testimony under the guise of rebuttal." *38 Cyc. 1344,* citing *People* v. *Van Ewan, 111 Cal. 144.*

With this mistaken element eliminated the defendant's case seems to us to stand upon her bare unsupported denial of the criminal act. and such a denial is not, in our judgment, under all the circumstances here involved, sufficient to overcome the case made out by the petitioner and several disinterested corroborating witnesses, which, standing alone, we think entitled him to a decree in his favor. Being satisfied, therefore, that there was evidence of the essential elements, and a clear weight of the evidence establishing the commission of the offence, the decree is reversed and the cause remitted to the court of chancery in order that a decree may be entered granting the divorce prayed for.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER. BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS—12.

*For reversal*—None.